STATE *vs.* ROSE NAGLE.

PROVIDENCE—APRIL 15, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Criminal Law.  Indictments.  Evidence.  Confessions.*

A statement made by one accused of murder to the *mittimus* officer, while in custody on the way to jail, in the nature of a confession and offered as such, after being told by the officer that "the truth, whatever that might be, ought to be told; that it was always the best, except where it would be the means of conviction, and that even then he should prefer it if it were his case; that there was ample proof that the accused had bought the revolver, and that, having mentioned the place where she bought it, she might just as well say whether or not she bought it," was not freely and voluntarily made, the language of the officer naturally conveying to the mind of the accused the idea that she would gain some advantage by admitting that she bought the revolver, and hence was improperly admitted and reversible error. .

(2) *Criminal Law.  Evidence.  Experiments.  Expert Testimony.*

Testimony of an expert in gun-shot wounds, who has conducted a series of experiments with pistols of the same caliber as that with which the homicide was alleged to have been committed, as well as with the pistol in question, as to the nature and effect of such wounds, and of the manner in which they were produced, is properly admitted, and is not obnoxious as being *ex parte* and manufactured evidence.

While the testimony as to  experiments with the pistol in question was not necessary, as the establishment of the fact sought existed independ-

ently, it was admissible as within the rule that, whenever the opinion of a person is deemed to be relevant, the grounds on which the opinion is based are also deemed to be relevant.

INDICTMENT, charging murder. Heard on petition of defendant for new trial, and petition granted.

TILLINGHAST, J. The defendant, who has been convicted of the crime of murder, now petitions for a new trial on various grounds, amongst which are certain alleged erroneous rulings of the trial court in the admission of testimony.

The defendant's husband, James Nagle, came to his death on the 14th day of November, 1901, at about five o'clock in the morning, from the effect of a pistol shot which was fired into his head while he was in bed, or on the bed, in his own house in East Providence.

Shortly after the fatal shot was fired the defendant called in some of her neighbors and told them that her husband had shot himself; which statement was then accepted by them, as it also was by the medical examiner, who appeared a few moments later, as being true. The day following, however, in view of certain circumstantial evidence which had been discovered in relation to the taking off of the deceased, and particularly in relation to the alleged purchase by the defendant, a short time before, of a pistol at the store of Halliday Brothers in East Providence, she was arrested upon a criminal complaint charging her with the murder of her husband. Upon being arraigned in the District Court of the Seventh Judicial District she pleaded not guilty to said charge, and was ordered committed to jail to await a preliminary examination in said court. She was committed to jail by Samuel S. Barney, town sergeant and *mittimus* officer of the town of East Providence, and while on the way to jail in his custody certain statements or admissions were made by her, according to his testimony, to which he was allowed to testify, against the defendant's objection, in the trial of the indictment now before us.

(1)   Before testifying to such statements or admissions, the witness was inquired of by the attorney-general as to whether any inducement was offered to defendant to talk about the

affair; also whether the witness tried to get her to talk with him about it, or whether he made any threat to her in the premises. His answer was that he had no inducement to hold out to her and actually held out none; whereupon he was permitted, against the defendant's objection, to testify to the conversation which took place between them. He testified as follows: "She insisted on her innocence. She said: 'They have found me guilty and bound me over to the grand jury— guilty of killing Jimmy. I am innocent; I did not kill him.' I said to her, 'You have an undoubted right to plead guilty or not guilty—that is your privilege. There is no reason why you should plead guilty—you have that privilege—the court allows you that either way.' There was nothing further said about the matter of killing directly. She said something about the pistol—she says, 'I didn't buy a pistol. In fact,' she says, 'I was never in Halliday's store in my life.' I reminded her that nothing had been said about Halliday's store, that I hadn't mentioned it. She talked rather incoherently about some other matters, and I asked her a question. I said, 'What did you pay for the pistol?' She said '$2.' She didn't say where she bought it directly. 'Well,' I said, 'did you pay for the cartridges?' She said 'They gave me the cartridges in the store.' Q. Was there anything said in that conversation about insurance on James Nagle's life? A. There was. She said that she had two insurance policies, if I remember correctly, $200 each, or something to that effect. 'If I am proven and found guilty I shall lose that, I would not get a cent of it.' "

In cross-examination the court said to defendant's counsel: "You can ascertain now about those threats and the inducements held out." The witness then stated that he told defendant that the truth, whatever that might be, ought to be told, but that she had an undoubted right to plead guilty or not guilty in regard to any part of the case which was coming before the court. That he also told her: "The truth is always the best except where it would be a means of conviction, and even then I should prefer, if it was my case, to tell the truth. Q. And you told her that before she said these things? A. Yes, sir; I told her so always."

In view of these admissions on the part of the witness Barney, the defendant's counsel then requested that the jury be instructed not to consider said testimony, on the ground that witness had no right to give her advice at all, or hold out any inducements. This request was denied, and the defendant duly excepted thereto.

In further cross-examination witness testified that he said to defendant: "It is thought that you bought this revolver; but she said, 'No, sir; I did not buy it.' I said to her 'there is no question but what you bought the revolver, and if you did you will gain nothing by denying it.' Also 'It would be better for you to tell the truth; we have ample proof that you purchased this revolver.' That she said: 'I did not, and I never was in Halliday's store in my life.' I remarked that I did not mention Halliday's store in the matter at all. 'Now,' I said, 'having mentioned the place where you bought it, you might just as well say whether or not you bought it. What did you pay them for that revolver?' She said 'I paid them $2.00 for it, and they gave me the cartridges.' " Defendant then told witness where she had put the revolver, but she persistently denied ever having used it upon her husband.

The question raised by the defendant's exception, broadly considered, is whether the court erred in not granting defendant's request to instruct the jury not to consider any part of said Barney's testimony which related to statements or admissions made by defendant concerning the purchase of the pistol and the procuring of the cartridges therefor.

Although the statements or admissions in question did not amount to a confession within the strict legal import of that term—a confession being a voluntary acknowledgment of guilt, or, as well and concisely defined in Stephen's Digest of the Law of Evidence, page 72, "A confession is an admission made at any time by a person charged with a crime, stating or suggesting the inference that he committed that crime,"—yet, as said admissions had a vital bearing upon a highly important link in the chain of circumstantial evidence relied on by the prosecution, we must regard them as in the nature of a confession. Indeed, we think it is manifest from the record

that the sole ground upon which the proof of the conversation above set out was tendered by the prosecution was that it was in the nature of a confession. And this being so, it follows that, in determining whether the proper foundation for its admission was laid, or, rather, whether the trial court erred in not ruling it out, as requested by defendant, it is immaterial how far the confession tended to prove guilt. "Having been offered as a confession," as said by the court in the recent and noted case of *Bram* v. *United States*, 168 U. S. p. 541, "and being admissible only because of that fact, a consideration of the measure of proof which resulted from it does not arise in determining its admissibility. If found to have been illegally admitted reversible error will result, since the prosecution cannot, on the one hand, offer evidence to prove guilt and which by the very offer is vouched for as tending to that end, and on the other hand, for the purpose of avoiding the consequences of the error caused by its wrongful admission, be heard to assert that the matter offered as a confession was not prejudicial because it did not tend to prove guilt." This quotation is pertinent to the case at bar. The admissions made by the defendant were offered by the prosecution as tending to prove guilt. If they did not have that tendency, then they were inadmissible in evidence. But that they clearly did tend to prove guilt, and that they were only admissible as being in the nature of a confession, or as amounting to a partial confession, is evident.

Treating the statements of the defendant in question, then, as in the nature of a confession, we are next to inquire whether, in view of the manner in which they were obtained by the committing officer, they were obnoxious to the rule which obtains in such cases. This rule is well stated in 3 Russell on Crimes, 6th ed. 478, as follows: "But a confession, in order to be admissible, must be free and voluntary; That is, must not be extracted by any sort of threats or violence; not obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force

of the influence used or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." See, also, 1 Greenl. Ev., 16th ed. §§ 219–20; Taylor on Ev., 9th ed. § 872, *et seq.;* 1 Bishop Crim. Pro., 3rd ed. § 1217, *et seq.; Hopt* v. *Utah,* 110 U. S. 574; *Reg.* v. *Baldy,* 2 Den. & P., Crown Cases, 430.

We have come to the conclusion, after much consideration, that the statements or admissions made by the defendant were not freely and voluntarily made within the rule as thus stated, and hence were improperly allowed to go to the jury. It appears, from the cross-examination of the committing officer, Barney, that, previous to the making of most of said statement by the defendant, he had told her that the truth, whatever that might be, ought to be told; that it was always the best, except where it would be the means of conviction, and that even *then* he should prefer it if it were his case. He had also told her, during the latter part of the conversation, that it was thought she bought the revolver; that there was ample proof that she bought it, and that, having mentioned the place where she bought it, she might just as well say whether or not she bought it.

At the time when the statements in question were obtained from the defendant she was in the custody of this officer and on the way to jail charged with the crime of murder. That she must have been in a high state of nervous excitement and mental distress, whether guilty or not guilty, and hence ready to catch at any gleam of hope whereby her situation might be bettered, goes without saying. The familiar saying that "Drowning men catch at straws," aptly illustrates the mental condition of one in her situation at that time. And we think it is not only possible but probable that, having stoutly and persistently asserted her innocence to the officer of the terrible crime charged against her, she was led to believe, by his persuasive and continued questioning, that it would not only do no harm but would, in some way, be better for her to admit the purchase of the pistol and the obtaining of the cartridges in question. In other words, the language used by the officer, taken as a whole (and taken in connection with the contradic-

tory statements made by the defendant about the purchase of the pistol), was such as to very naturally convey to the mind of the defendant the idea that she would gain some advantage by admitting that she bought the pistol and obtained the cartridges therefor. And hence it cannot be said that her admission relating thereto was voluntary.

We do not wish to be understood in what we have thus said, however, as deciding that a mere request, advice, or admonition to tell the truth will render a confession induced thereby inadmissible in evidence, for the strong current of authorities, as well as the better reason, is to be contrary. Am. & Eng. Ency. of L., 2nd ed. vol. 6, p. 531, and cases cited; *State* v. *Habib*, 18 R. I. 558. Those decisions which have gone to the extent of so holding have certainly gone "to the verge of good sense, at least." *Com.* v. *Chance*, 174 Mass. p. 249. But where the request or admonition is given in such language and under such circumstances that the prisoner might naturally have understood it as recommending a confession, the confession induced thereby will be inadmissible in evidence.

Nor do we wish to be understood as agreeing with counsel for the defendant in his contention that a confession made by a prisoner to the officer in whose custody he is, is not admissible in evidence, for such is not the law. On the contrary, a confession to the officer in charge of a prisoner, if voluntarily made, is just as admissible as if made to any other person, as ruled by the trial court in this case. See cases collected in Am. & Eng. Ency. of L., vol. 6, *supra*, pp. 536, 539; *Pierce* v. *United States*, 160 U. S. 355.

(2) The next exception relied on by defendant is that which was taken to the admission of the testimony of Dr. Jay Perkins as to the result of certain experiments made by him in firing the revolver with which the deceased came to his death. Doctor Perkins was the medical examiner for Providence at the time, and had been such for six years previous. He had had large experience with gun-shot wounds which were self-inflicted, and also with those which were not self-inflicted, and had made a special study of the nature and effects of such wounds, and of

the manner in which they were produced. In short, he was shown to be an expert in such matters.

The theory of the defence in this case was that the deceased committed suicide. The testimony of Doctor Allison was that the bullet wound was on the right temple, about one and one-fourth inches above the right ear; that the hair was singed above the bullet wound about one and one-half inches, also back of the ear a little, and that the beard of the deceased was singed to a point down below the angle of the mouth.

The autopsy showed that the course of the wound was downward and backward, and that the bullet lodged in the cerebellum. The proof shows that there was much greater burning of the hair beneath the wound, in the direction of the mouth, than above the wound; and it was claimed on the part of the prosecution that this was a material fact in determining the position in which the revolver was held when it was fired, the contention being that it was practically impossible for the deceased to have so held the revolver himself as to have caused the wound and the burning or singeing referred to. Doctor Perkins testified first, without objection (p. 186 of the Record), that he had made experiments with 32-caliber revolvers to ascertain the amount and character of burning which would be made by the discharge thereof. He then testified that he had made experiments with the particular 32-caliber revolver in question. To this testimony the defendant's counsel objected, on the ground that the experiments were *ex parte*, and hence should not be admitted, as the witness was not shown to have been an expert regularly appointed by the court. This objection was overruled, subject to exception.

The doctor then testified that if a pistol is held at any distance from the target the perforation made by the ball is not in the centre of the burn, and that a greater part of the burn is on the side corresponding to the hammer of the revolver. He also testified that this is always so; that his own personal observation of gun-shot wounds, and all the best authorities, showed it to be the invariable rule that the greater part of the burn is always in the direction of the side in which the hammer of the revolver is held.

The contention of the prosecution in support of the admissibility of this evidence is that, having shown the existence of such a fact, it was competent to show that experiments made with the revolver in question produced similar results; while the contention of the defendant is that such evidence is in the nature of manufactured evidence, and hence inadmissible. We do not think the court erred in admitting the testimony in question. Had the experiments been made by a person not an expert in such matters, and had they been limited to the particular pistol which caused the injury, a very different question would arise. For, in such a case, the entire value of the testimony would depend upn the accuracy, skill, and honesty of a particular person regarding a particular and isolated transaction, with no opportunity on the part of the defendant to contradict it. But such is not the case here. The *ex parte* experiments, if such they may be called, which were made by Dr. Perkins, were not necessary in the establishment of the fact sought to be shown by the prosecution, as that existed independently thereof, as was fully shown in evidence. There was no occasion, therefore, to introduce the particular testimony objected to. But still we see no good reason why it was not admissible, as it tended to corroborate the position taken by the expert. And it is a well-settled rule that, whenever the opinion of a person is deemed to be relevant, the grounds on which such opinion is based are also deemed to be relevant. Stephens' Digest of Ev., May's ed. 109; *Hawkins* v. *Fall River*, 119 Mass. 94: *Com.* v. *Webster*, 5 Cush. 295.

See *State* v. *Justus*, 50 Am. Rep. 470, as to experiments made by non-professional witnesses.

If a chemist were called as a witness in a criminal case, and were asked the question whether a certain chemical always produces a certain result under given conditions, could it be properly objected that, because he had confirmed the result reached by him by experiments conducted alone in his laboratory with the particular chemical in question, such evidence should be excluded because the defendant was not present when the experiments were made? We think not. In such

a case the witness would be testifying as an expert, and it would be competent for the defendant to contradict his conclusions if they were unscientific or incorrect; so that no harm could come to the defendant simply because he was not present or represented when the particular investigation in question was made.

In *State* v. *Asbell*, 57 Kan. 398, it was held that a witness experienced in the use of firearms might properly testify as to experiments like those here in question.

The case of *Tesney* v. *The State*, 77 Ala. 33, cited by defendant's counsel in support of his objection to the testimony in question, is very different from the one before us. There, the witness did not show that he had had any experience in respect to the requisite proximity of a pistol, when discharged, to leave signs or indications of burnt powder on the clothing. And the court said: "A person may be skillful and experienced in the use of firearms and have no observation or experience in respect to the particular matter inquired about. But the court erred in permitting evidence of the result of a solitary experiment of firing at a coat similar to the one worn by defendant, and the exhibition of the coat to the jury. Such evidence superinduces the mischief of trying a collateral controverted matter by proving separate and distinct experiments with results as variant as the manner of loading the pistols, and the modes of making the experiments, dependent more or less on the wishes and feeling of the person making them, and tends to confuse the jury and withdraw their minds from the consideration of the main issue. The witness, if an expert, may give his opinion, and detail generally the facts on which it is based, whereby the value of the opinion, and of the evidence on which it is founded, is submitted to the jury—*McCreary* v. *Turk*, 29 Ala. 244."

The cases of *Forehand* v. *State*, 51 Ark. 553, and *Yates* v. *The People*, 38 Ill. 527, relied on by counsel for defendant, are not in point. The experiment in the former case was made by the jury, after they had retired to their room to consider upon their verdict, for the purpose of testing the truth of the defendant's statement. And it was held, and very

properly, that this was taking evidence out of court and in the defendant's absence, and was such misconduct on the part of the jury as entitled the defendant to a new trial.

In the latter case the defence was that the deceased had come to his death by his own hand by shooting with a pistol, which was found near his person. On the trial, a pistol was shown to the jury and identified as one which had been sold to the prisoner. But it was not proved to be the one that was found near the deceased, and by the agency of which he undoubtedly came to his death. After the retirement of the jury the pistol which had been shown to them on the trial was sent to them without the knowledge of the prisoner, his counsel, or the court, and they experimented with it for the purpose of judging whether, under the circumstances proven, the deceased could have shot himself with that weapon. The trial resulted in a verdict of guilty; and it was held that because the pistol, which had not been properly identified as the one by means of which the deceased was killed, was allowed to go to the jury without the prisoner's consent, a new trial should be granted.

*Boyd* v. *The State*, 82 Tenn. 161, cited by defendant, not only fails to sustain the position taken by him, but, on the contrary, is a strong authority in support of the admissibility of the evidence in question. It was there held, in a very well reasoned opinion, that experts may testify as to the results of experiments, made before and during the trial, based upon facts established by the evidence.

The theory of the defence in that case was that the deceased came to her death by her own hand, and there was evidence *pro* and *con* as to whether there were any powder-stains on her clothing. The deceased was shot through the chest, the ball entering under the third rib on the left side, two and a half inches from the centre of the breast bone, coming out at the eighth rib, and breaking that rib where it joins the back bone.

The court said: "As stated, the experts derived their knowledge, to some extent, from experiments made shortly before or perhaps, in part, during the progress of the trial.

A great deal of our knowledge is thus acquired, and it is recognized in everyday life as a legitimate source of knowledge. And it is upon this ground of experience or experiment that persons who have devoted their attention to particular branches of science or art may give their opinions, founded upon such experience and observation. So a surgeon was allowed to testify that a pistol must have been fired close to the body of the deceased, because there distinctly appeared marks of powder and burning on the wrist. Wharton on Hom. § 677. . . . The fact that the witnesses detailed the nature of experiments does not diminish the force of the opinions founded upon them. If the experiments are such as to throw light upon the subject of inquiry, testimony as to them is not only admissible but very material. In most matters the opinion of the witness derives its value from the facts upon which it is founded, whether it be from observation, knowledge or experiment."

While we have no reported case in this State bearing upon the admissibility of testimony as to *ex parte* experiments like those brought in question in the case at bar, such testimony was admitted in the somewhat noted local case of *State* v. *Congdon,* a murder case, which was tried at great length at East Greenwich in 1883. The weapon used by the defendant was a pistol, and an important question at the trial was as to the nearness of the pistol to the deceased when the fatal shot was fired. Dr. William H. Palmer, of Providence, a well-known expert on gunshot wounds, was permitted to testify as to many experiments made by him, both before and after the homicide then in question, in order to determine at what distance from the muzzle of a pistol like the one used in that case powder-burns or powder-marks could be caused. Whether this testimony was objected to does not appear from the record of the case which has been preserved. But in view of the fact that the defendant was represented by such eminent counsel as Hon. Willard Sayles, for many years the able attorney-general of this State, and Adoniram J. Cushing, Esq., and that no point was taken by them in the defendant's petition for a new trial (*State* v. *Congdon,* 14 R. I. 458)

that the testimony referred to was improperly admitted, it is fair to assume that such testimony had not theretofore been regarded as objectionable by the bar.

We therefore decide that the trial court did not err in admitting the testimony now in question.

We have carefully examined the other exceptions taken by defendant's counsel, but do not consider them to be tenable, or of sufficient importance to require special attention. As a new trial must be granted because of the error of the court in refusing to rule out the testimony first hereinbefore considered, after it appeared that the admissions in question were improperly obtained, there is no occasion for us to determine whether the verdict was against the evidence.

Petition for new trial granted.

*Charles F. Stearns, Attorney-General*, for State.

*George R. Macleod*, for defendant.