281 A.2d 298.

LEE WILLIAM POWERS *vs.* JACK CARVALHO.

SEPTEMBER 22, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. These are three civil actions instituted in April of 1956 in which the plaintiff seeks to recover damages from the defendant in an action for assault and battery, an action for slander, and an action for false imprisonment. The three cases were tried together to a jury in

the Superior Court in 1969, and verdicts were returned for the plaintiff in the amount of $2,000 in the action for assault and battery, in the amount of $20,000 in the action for slander, and in the amount of $3,000 in the action for false imprisonment. Thereafter, the plaintiff moved that he be granted an additur in the action for assault and battery, and the defendant moved for a new trial in all three of the actions. Subsequently, the defendant waived his motion for a new trial in the assault case, and the trial justice denied the plaintiff's motion for an additur in that case. The trial justice then ordered that new trials be granted. in the action for slander and the action for false imprisonment unless the plaintiff filed a remittitur in the action for slander for all of the verdict in excess of $3,000. Both parties thereafter prosecuted appeals to this court.

These cases arose out of an incident in 1956 in which defendant, who owns and operates a retail liquor store in Pawtucket, was assaulted by an intruder in an apparent attempt to perpetrate robbery of the premises. The plaintiff was subsequently taken into custody by the police, apparently at the suggestion of defendant. The plaintiff was held under investigation for two days. He was first placed in a lineup and was identified by defendant as the man who had struck him. Thereafter, plaintiff was viewed by people who had witnessed the alleged robbery, neither of whom identified him as the suspect. Subsequently, during interrogation by the police in the presence of defendant, plaintiff denied the attempted robbery and was struck in the face by defendant. He was thereafter discharged from custody by the police and subsequently brought these three actions against defendant.

It appears that during the course of the investigation by the police, plaintiff was given a lie detector test by the state police. In his opening statement to the jury, counsel· for plaintiff twice referred to the fact that plaintiff had·

taken the lie detector test and that the results thereof had exonerated him.[1] Counsel for defendant, at the close of the opening statements, moved that this reference to the fact that a lie detector test had been taken and had apparently been negative in result would not have been admissible in evidence, was prejudicial to defendant, and moved that the case be passed. The court denied this motion, holding that statements of counsel are not evidence and that he would instruct the jury that such statements of counsel were not evidence and were not to be considered in reaching a verdict.

Subsequently, during the course of trial, plaintiff testified that he had been asked by the police if he would take a lie detector test and that he had agreed to do so. He further testified that he had been taken to a state police barracks where the test was administered and he was asked a lot of questions during that time. No objection was made by counsel for defendant to the admission of this evidence at the time, but the following morning counsel for defendant moved that the case be passed because plaintiff had testified in narrative form that he had been taken to state police headquarters and given a lie detector test. The defendant argued that the fact that evidence as to the lie detector test was before the jury and that there was testimony that there had been no prosecution of plaintiff was susceptible of an inference that the test had found plaintiff to be innocent of the charge and, therefore, was highly prejudicial to defendant. The court denied the

---

[1]The transcript does not record the opening remarks of counsel. However, the transcript does disclose that counsel for defendant, in moving to pass the case, said that counsel for plaintiff in his opening statement "* * * referred twice to lie detector tests taken by the plaintiff in this case, the results of which exonerated him." This representation as to the remarks of plaintiff's counsel does not appear from the record to have been disputed.

motion to pass, saying that it would give a special instruction during its charge to the jury, if so requested.

In this court defendant argues that the trial court's denial of his motions to pass the case because of references to lie detector tests on two occasions constituted reversible error. The antecedent question, then, is whether in this state evidence as to the taking of a lie detector test or as to the results of such a test was admissible in evidence. The overwhelming weight of authority is that evidence of the results of polygraph or lie detector tests, so called, is inadmissible and in most of such jurisdictions evidence as to the taking or refusal to take such a test is likewise inadmissible. The view taken by a substantial majority of jurisdictions is aptly stated in *State* v. *LaForest,* 106 N. H. 159, 207 A.2d 429, where the court, referring to such lie detector tests, said at 160, 207 A.2d at 430: "Nevertheless the results of these tests have been rejected by the courts as evidence of guilt or innocence of the accused by the overwhelming weight of judicial authority on the ground that these tests have not yet attained sufficient scientific acceptance as an accurate and reliable means of ascertaining truth or deception."

Many of the jurisdictions which follow the rule stated in *LaForest* holding as inadmissible the results of such tests hold also that any evidence as to the taking or refusal to take such tests is likewise excluded. Typical of these cases is *State* v. *Perry,* 274 Minn. 1, 142 N.W.2d 573. There the Minnesota court stated what might be described as the rule of total inadmissibility. The court said at 12, 142 N.W.2d at 580: "It is well settled that the results of a lie detector test are inadmissible in evidence against an accused because, up to the present at least, such tests have not been proved completely reliable; and, in extension of this rule, that evidence that such a test was taken or refused by a defendant cannot be brought to the jury's at-

tention either directly or indirectly." See also *State* v. *Carnegie,* 158 Conn. 264, 259 A.2d 628; *State* v. *Emory,* 190 Kan. 406, 375 P.2d 585; *Rawlings* v. *State,* 7 Md.App. 611, 256 A.2d 704; *Henderson* v. *State,* 94 Okla.Crim. 45, 230 P.2d 495; *Commonwealth* v. *Saunders,* 386 Pa. 149, 125 A.2d 442; *State* v. *Britt,* 235 S. C. 395, 111 S.E.2d 669.

This court has not yet been confronted with the question of whether the results of a lie detector test properly may be admitted into evidence. This court has never been hostile to the proof of fact by evidence relating to scientific tests or experiments. In *State* v. *Nagle,* 25 R. I. 105, 54 A. 1063, a medical examiner testified that, in his opinion, a gunshot wound above the ear of the deceased was not self-inflicted. He testified, in support of this opinion, as to experiments that he had made with a pistol resulting in his conclusion that the wound that caused death could not have been self-inflicted. This court held that such evidence would be admissible to corroborate the opinion of an expert, saying that "* * * whenever the opinion of a person is deemed to be relevant, the grounds on which such opinion is based are also deemed to be relevant." *Id.* at 113, 54 A. at 1066.

Later, in *State* v. *Gregoire,* 88 R. I. 401, 148 A.2d 751, evidence of tests concerning the use of an instrument known as an alcometer designed to show the alcoholic content of the breath of a person charged with the operation of a motor vehicle while under the influence of intoxicating liquor was rejected by this court. The rejection rested on two grounds, primarily, that no foundation had been laid in evidence to establish the qualification and expertise of the police officer who had administered the test and, secondly, that no foundation had been laid to establish the reliability and accuracy of the device. We noted, relying on Wigmore, *Science of Judicial Proof,* §220 (3d ed.), that judicial reliance upon such a device depends upon general

acceptance of its reliability by experts in the relevant scientific field.

*Gregoire,* then, suggests our adherence to the general rule concerning the admission into evidence of testimony regarding the results of scientific tests including the polygraph or lie detector. Evidence as to the result of such tests is to be admitted only if a foundation has been laid establishing the acceptance of the device as reliable and accurate in the relevant scientific fields of endeavor and of the qualification or expertise of the person who operated the device and interpreted its results. Obviously, evidence as to the result of lie detector tests is never admissible as conclusive of the guilt or innocence of a person charged with a crime, such conclusion being exclusively within the province of the jury. Neither should it be admitted as conclusive of the truth or falsity of a factual statement made by the person undergoing the test but only as evidence for the jury's consideration on the question of credibility, this being also exclusively within the province of the jury.

We have discussed the admissibility into evidence of testimony concerning the results of a lie detector test only for the purpose of establishing some general guidelines for our trial courts. Nothing in the instant record discloses any formal offer of evidence adduced through one purporting to have expertise in the operation and interpretation of such device as to the results of the test that was taken by plaintiff. The issue here is whether the trial justice's denial of defendant's motion to pass the cases on two occasions when it was disclosed to the jury that plaintiff had submitted to such test was reversible error. We think that it was.

The first such statement was made in the presence of the jury during the opening statement of plaintiff's counsel, the record indicating that the jury was informed that plaintiff had submitted to such a test and had been exonerated.

In *State* v. *Peters*, 82 R. I. 292, 107 A.2d 428, this court concluded that in making opening statements counsel should exercise great care against making reference to improper extraneous matters, particularly when such reference would tend to prejudice the minds of the jurors, the court saying: "In other words, no facts should be stated unless material and competent." *Id.* at 297, 107 A.2d at 431. In that same case the court directed the attention of the trial justice to his duty to protect the parties, both in civil and criminal cases, against any utterance or conduct of attorneys which would, or reasonably might, tend to prejudice them with the jury. It is our conclusion that the remarks of counsel concerning plaintiff's submission to a lie detector test reasonably could have persuaded the jurors that he was innocent of the charges brought against him by defendant and obviously thereby prejudice defendant's case with the jury. In *State* v. *Kolander*, 236 Minn. 209, 222, 52 N.W.2d 458, 465, concerning the prejudicial effect of the admission of such evidence the court said: "The impact upon the minds of the jurors of a refusal to submit to something which they might well assume would effectively determine guilt or innocence, under these conditions, might well be more devastating than a disclosure of the results of such test, if given after a proper foundation had been laid showing how the apparatus functioned." In our opinion, disclosure of the fact that one submitted to such a test can be equally prejudicial.

Again, during direct examination plaintiff himself testified that he had submitted to a lie detector test administered by the state police. Subsequently in his testimony it was made clear that the Pawtucket police had released him from custody without bringing any charges against him. Here again it is difficult to perceive that such evidence could not reasonably have persuaded the jury that plaintiff was innocent of the charges preferred against him.

by defendant and that, therefore, defendant made the accusation without cause and with malice.

In each instance we think the motion to pass the case was timely made and was erroneously denied by the trial justice. As we have noted, the possible impact of such disclosures upon the minds of the jury is undisputable. They could have been and probably were impressed by the fact that this test had been taken and that thereafter no prosecution of plaintiff occurred and concluded that plaintiff's statements concerning his innocence with respect to the assault upon defendant had been scientifically corroborated. The tendency of jurors to give unwarranted credence to evidence put before them as a product of scientific investigation or experimentation is well known.

It may be that in some peculiar circumstances the giving of a strong cautionary or curative instruction by the court to the jury might negative this prejudice. However, in the instant case the charge given by the court was insufficient, in our opinion, to remove from the minds of the jury any such prejudice that might have been implanted there by the references made to plaintiff's submission to such test. The court did instruct the jury that "* * * you will draw no inference of innocence or guilt from the mere fact that the Plaintiff took a lie detector test." This, in our opinion, cannot be viewed as neutralizing any prejudice implanted in jurors' minds by the disclosures.

It is necessary that we make clear our awareness that the cases to which we have referred in this opinion involve prosecution of criminal charges, while the cases that we now consider are civil actions involving slander and false imprisonment. The question is, then, whether the rule governing the admissibility of evidence of such tests in criminal prosecutions is applicable also in civil actions. Without intending to lay down a general rule as to the admissibility of evidence with respect to such tests in civil

actions, we are constrained to conclude that in the civil actions here under consideration the rule of exclusion must apply. In these cases the question of whether the plaintiff was innocent or guilty of the charge brought against him by the defendant is material to the issue of the defendant's liability to the plaintiff in damages in these civil actions. That being so, we are of the opinion that evidence disclosing that the plaintiff had submitted to such a test and was not prosecuted after submitting to such test was improperly admitted in these actions.[2]

The appeals of the plaintiff are denied and dismissed pro forma; the appeals of the defendant are affirmed, the judgments appealed from are reversed, and the cases are remitted to the Superior Court for new trials.

*John F. McBurney, William J. Burke,* for plaintiff.

*Blais, Cunningham, Thayer, Gagnon & Ross, Ronald R. Gagnon, Henry J. Blais, III,* for defendant.

---

[2]There is a paucity of decisions concerning the admissibility of lie detector tests in civil cases. However, in *Stone* v. *Earp,* 331 Mich. 606, 50 N.W.2d 172, the court at 610, 50 N.W.2d at 174, citing *People* v. *Becker,* 300 Mich. 562, 2 N.W.2d 503, stated that it could find no reason why the same rule should not be applied in both civil and criminal cases. In *People ex rel. Perz* v. *Schneemilch,* 65 Ill.App.2d 337, 213 N.E.2d 50, evidence concerning a lie detector test was held inadmissible in a paternity suit, which under Illinois law is a civil action.