The STATE of Utah, Plaintiff and Respondent,

v.

Rory ABEL, Defendant and Appellant.

No. 15769.

Supreme Court of Utah.

Sept. 18, 1979.

David B. Dryden of Dorius & Dryden, Brigham City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Theodore L. Cannon, Salt Lake County Atty., Salt Lake City, Jon J. Bunderson, Deputy Salt Lake County Atty., Brigham City, for plaintiff and respondent.

STEWART, Justice:

Defendant Rory Abel appeals from a rape conviction pursuant to § 76–5–402, U.C.A. 1953, as amended. The defendant was tried before a court sitting without a jury. On appeal, he argues the court erred in admitting and using the results of a polygraph examination to find guilt. Because the trial judge clearly indicated on the record that the polygraph evidence made the decisive difference between conviction and acquittal, there can be no question that if the evidence was improperly admitted, it was indeed prejudicial and requires a reversal. We hold that the polygraph evidence was improperly admitted in this case and accordingly reverse the judgment of conviction.

Sherry K., age 17, and her friend Barbara B. drove from Brigham City, Utah, where they lived, to Ogden, Utah, late in the afternoon of December 16, 1977, to do some Christmas shopping. Sherry testified that while shopping she lost her keys, and that she and her friend were delayed about two hours while trying to find them. During this time, they became acquainted with two young men, the defendant, Rory Abel, and his companion, Lloyd A., who asked the girls if they would give them a ride back to Brigham City. Sherry agreed, and after the four stopped at some stores and got something to eat, they drove back to Brigham City.

According to Sherry, first Barbara and then Lloyd were taken home. She testified that as she was driving the defendant home, he grabbed the steering wheel from her and drove out on a secluded road, where he forcibly overcame her resistance and had sexual intercourse with her. She stated that she then drove the defendant back into town, dropped him off, and returned home about 2:30 a. m.

The defendant's version of the incident varies substantially from Sherry's. According to the defendant, he and Lloyd met the girls in Brigham City, went to Ogden together, and then went to a party at the home of friends, which took up the couple of hours supposedly lost in looking for the keys. He testified that she lost her keys temporarily, but he claimed that this happened at the party. He agreed about the attempt to do some shopping and admitted that after the other two had been left off at their homes, he had sexual relations with Sherry. He contends, however, that it was with her consent.

Twenty-five days later, on January 10, 1978, Deputy Sheriff Dennis Abel, who happens to be the defendant's uncle, called the defendant and asked him to come down to the sheriff's office. Deputy Abel gave the defendant the *Miranda* warning, described what a polygraph test was, and asked the defendant if he would submit to such a test. The defendant, who was not represented by counsel at that time, was offered what was proposed as a stipulation indicating that the polygraph results could be used at a trial.

> Pertinent parts of the document are: I further understand that Polygraph examination results are presently inadmissible as court evidence *except by Stipulation or agreement of both parties concerned*, and I understand that by consenting to this Polygraph examination, the results thereof and any statements made by me may be used against me in this or in future criminal proceedings and I consent to such use.

It also provided that "each of us" (the defendant and the prosecution) "declares and agrees that Larry McFarland is an expert examiner" and "that the questions, . . answers . . . and the entire results of the said examination, including the opinion of the said examiner may be received in evidence, either on behalf of the State of Utah or in my own behalf."

The defendant signed the document, and the test was administered. It is significant that the document was not signed by the prosecution. The situation then was that if the test results were unfavorable to the accused the State could claim the right to use them, but if they favored the accused, the State under existing state law, see *infra*, could prevent the accused from using them in his behalf.

■ After another 20 days had elapsed, on January 30, 1978, the defendant was arrested. At trial, the act of intercourse was admitted; the sole issue was the consent of the girl. The document referred to above was admitted over the objection of defendant's counsel,[1] and Lieutenant Larry McFarland, a lieutenant in the Cache Valley Sheriff's Office testified as to his polygraph examination of the accused and of the victim. He testified that when he asked the defendant whether he "forced" the victim to have "sex," the defendant answered "no." Officer McFarland testified that on the basis of the polygraph test it was his opinion the defendant "was attempting deception" in that response. As to the victim, Sherry, he stated that he had asked her if she had lied when she said that the defendant "forced [her] to have sex with him," to which she replied "no." He rendered his opinion that the polygraph examination results were "inconclusive" as to whether she had answered truthfully.

In discussing the evidence, the trial court stated:

There is difficulty with these types of cases, because it's the type of act where only those involved generally are around . . . .'. There are only two people who might say really, you know, what happened, and it does make for difficulty in the case.

The court then made the following statement:

That's why I'm giving particular stress and reliance, because I have confidence in it, [i]n the polygraph test. *I'm specifically stating this for the record so that it will be available as to reasons for my decision, that it might be some reasonable doubt* simply on belief if you only have the two parties, but *I believe that the reasonable doubt is eliminated by the polygraph test,* will accept it, *and for the reasons just stated will find the defendant guilty.* [All emphasis herein added.]

We are sensitive that in thus stating his reasoning, the trial judge may well have been motivated by a sense of fairness and an interest in providing a foundation for this Court to pass on the admissibility of the polygraph test evidence without a stipulation by the parties. The State on appeal argues that polygraph tests are reliable and should be admitted without a stipulation. Defendant argues that they are not sufficiently reliable to be admitted and correctly states that a majority of courts do not admit such evidence, at least in the absence of a stipulation. See cases collected in Annotation, 53 A.L.R.3d 1005 (1973).

The use of the polygraph is one means of attempting to solve the age-old problem of determining whether a person is telling the truth. Both its usefulness for that purpose and the credibility to be given it may well depend upon the circumstances of the individual case. This Court has heretofore observed that even its most sanguine proponents admit that it cannot be relied on to determine with absolute and invariable assurance whether a person is lying or telling

1. Defense counsel failed to object specifically to the admission of the test results themselves. Since, however, he did object to the introduction of the so-called stipulation, thereby objecting to the essential foundation necessary under

the circumstances for admission, we hold that the failure to make further objection to the tests themselves does not preclude defendant from raising the issue of the admissibility of the test results here.

the truth. *State v. Jenkins*, Utah, 523 P.2d 1232 (1974). This Court has, however, held that where there is a proper stipulation, such evidence may be considered in connection with all the other evidence in the case in determining the issues. *State v. Jenkins, id.; State v. Rowley*, 15 Utah 2d 4, 386 P.2d 126 (1963). See also *Powers v. Carvalho*, 109 R.I. 120, 281 A.2d 298 (1971); *State v. Valdez*, 91 Ariz. 274, 371 P.2d 894 (1962); *Cullin v. State*, Wyo., 565 P.2d 445 (1977).

Because of the conflict between the testimony of the victim and the defendant as to consent, there existed, according to the trial judge's own articulated analysis, a reasonable doubt as to the defendant's guilt. This result is understandable because of the plausibility of various aspects of both the victim's testimony and the defendant's testimony. Because of the direct conflict in testimony of the defendant and the girl, and the lack of strong circumstantial evidence pointing the one direction, the trial judge said that the doubt was removed by the polygraph test administered the defendant, even though the girl's polygraph test results were inconclusive.

The issue as to which the polygraph test results were admitted was the consent *vel non* of the complaining witness to the conceded act of intercourse. Cases in which guilt or innocence must be decided solely, or almost solely, upon the basis of one person's word against another's present the most difficult jurisprudential problems from the point of view of administering the burden of proof standard in a criminal case. That problem is especially acute when the disputed issue is the state of mind of an individual. How is one to decide that a defendant is guilty beyond a reasonable doubt solely on the basis of one person's word against another's? In such a case, a trier of fact is relegated to making a decision based solely on demeanor evidence, as in this case. Although demeanor evidence has long been considered of great value to a trier of fact—indeed it is one of the underpinnings of the rule against hearsay evidence—demeanor evidence is not always a particularly reliable guide for determining truth or falsity of testimony. Such evidence must be evaluated by the trier of fact on a basically subjective basis. Myriad factors unrelated to the actual truthfulness of the witnesses' statements may well influence, and perhaps determine, the ultimate resolution of the issue. Ethnic background, socio-economic status, personality structure, personal mannerisms in speech and conduct, and a host of other personal psychological factors pertaining to the witness and to the trier of fact may be important factors in evaluating the word of one person against the word of another.

■ The trial court, no doubt, because of awareness of these factors, and being unable to make an independent judgment with confidence as to which witness was telling the truth, relied on the polygraph test results in this case and on that basis found the defendant guilty. As a reviewing court, we are confronted with several problems existing in this case. First, the stipulation was not binding on the prosecution since it had not been signed by counsel for the State. Second, the test as to the girl whose state of mind was truly critical was inconclusive, and third, there was not an adequate foundation laid for admission of the polygraph test results independent of a stipulation.

As to the first point, it is, of course, clear that a stipulation does not in any way establish the reliability or accuracy of polygraph test results. However, it does embody an important notion of fairness for those parties who consider the polygraph reliable and are willing to rely on it. A stipulation forecloses one party from preventing admission of an adverse test after he and the opposing party have agreed it would be admissible, simply because he does not like the results. In addition, a stipulation allows each of the parties to insist that the polygraph be administered by reputable, qualified persons, in a manner most conducive to producing accurate results, and in a manner that can be monitored.

In the instant case, had the polygraph tended to verify defendant's version, the State might still have objected to its admis-

sibility because it had failed to sign the so-called stipulation. Furthermore, the defendant, not represented by counsel at the time, could not make a valid and informed judgment as to important questions about taking the test.

The tests in this case themselves raise significant questions as to their reliability. The polygraph test of the victim—whose mental attitude at the time of the act of intercourse was truly critical—was inconclusive as to whether she had given her consent. That is, the examiner could not tell whether she was telling the truth when she stated that she had not consented to intercourse. The record is devoid of any explanation for that inconclusiveness. The test administered to the defendant did, as stated, show an attempt at prevarication. In response to the question whether he had "force[d] [the victim] to have sex," the defendant answered "no." The examiner found that the defendant in giving that answer had attempted deception.

We cannot sustain a conviction rendered on the basis of the polygraph tests in this case. The question whether the defendant had "force[d] [the victim] to have sex" is ambiguous enough that a finding of prevarication on the part of the defendant does not necessarily lead to the conclusion that defendant had raped her, especially in light of the inconclusiveness of the tests as to her veracity.[2] It is possible that the term "forced sex" could have been interpreted by the defendant to refer to sexual activities that do not constitute rape.

In addition, this Court is faced with the unusual situation that a strikingly similar situation with respect to the admissibility of a polygraph test is presently pending before this Court in *State v. Collins*, Case No. 15812. In that case the *defendant* sought, without a stipulation, to introduce a lie detector test to show his innocence. The

State has argued to this Court in that case, contrary to its position in this case, that lie detector tests are inherently unreliable. Even more pointedly, the prosecution in *Collins* successfully argued to the trial court that a lie detector test of the alleged *perpetrator* of a rape, as to consent, is not reliably probative of the state of mind of the victim, and therefore should not be admitted. Whether that position is accurate was not determined in an evidentiary hearing in that case and not explored at all in this case. The prosecutor's position in *Collins* was accepted by the trial court, and the tests there held inadmissible. Whatever the reliability of the polygraph, particularly in this type situation, it is clear that the interest of justice is disserved by the State taking diametrically opposed positions with respect to the admissibility of polygraph tests in two different cases in order to secure convictions in each.[3]

This brings us to the third point. A large number of states have ruled upon the admissibility of lie detector tests, and most of them have excluded those tests from evidence, at least in the absence of a stipulation.[4] This does does not, of course, foreclose this Court from reassessing the question of reliability and admissibility of the test. It may well be that recent developments in this area of endeavor, as argued by the State, have progressed to the point where polygraph tests should be held admissible irrespective of a stipulation. But in this particular case we do not find a sufficient foundation in either the briefs or the testimony in the trial court for assessing the reliability and probative value of a polygraph examination given the alleged perpetrator of the crime to determine the issue of an alleged rape victim's consent.

We therefore have no alternative but to hold that because there was no stipulation binding both the State and the defendant,

---

**2.** The transcript discloses that the examiner intentionally used the term "forced sex" rather than the term "rape" because, according to him, the latter term has too much shock value.

**3.** We are aware that the State has no single agency responsible for the prosecution of crimi-

nal cases throughout the State, and therefore such inconsistencies may unavoidably arise in the trial courts; but on appeals to this Court, that difficulty does not exist.

**4.** See 53 A.L.R.3d 1005 (1973).

the polygraph test of the defendant was erroneously admitted.

In view of the court's specific finding that, absent the polygraph evidence, there was not sufficient evidence to prove guilt beyond a reasonable doubt, the defendant is entitled to judgment of acquittal. *Greene v. Massey*, 437 U.S. 19 , 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); see also *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Reversed and remanded for proceedings consistent with the views expressed herein.

MAUGHAN and WILKINS, JJ., concur.

CROCKETT, Chief Justice (dissenting):

It is my judgment that the reversal of this conviction and the outright release of the defendant without any actual determination as to his guilt or innocence is a defeat of the processes of justice.

My view is in direct contrast to the main opinion's statement that "the trial judge clearly indicated . . . that the polygraph evidence made the decisive difference between conviction and acquittal . . ." It is submitted that an examination of the trial court's discussion of the evidence will reveal that he did not actually confront nor pass upon the issue, nor indicate that he would find the defendant not guilty, in the absence of the polygraph evidence.

The statements quoted in the main opinion were made in relation to his consideration of that total evidence in the case as he then saw it, including the polygraph evidence; and most importantly, it is obvious from his statements that he was very much concerned with, if not practically entirely preoccupied with, the use and value of polygraph evidence.

In regard to the polygraph evidence the court stated:

That's why I'm giving *particular stress and reliance, because I have confidence in it,* in the polygraph test. I'm specifically stating this for the record so that it will be available as to reasons for my decision,

*that it might be some reasonable doubt simply* on belief *if you have only the two parties,* but I believe that the reasonable doubt is eliminated by the polygraph test, will accept it, and for the reasons just stated will find the defendant guilty. [All emphasis herein added.]

It is submitted that the fair and reasonable conclusion to be drawn from that statement is that the court was posing a hypothesis: that *if* there had been no polygraph evidence, there "*might* be some reasonable doubt," but that upon the basis of the evidence that had been presented, any doubt which might have existed was eliminated by the polygraph test; and that, due to the fact that he was much concerned with indicating his personal belief in the validity of the test, he was using the situation to express support for his views as to its value. But his hypothesis that *if* there were no polygraph evidence, there "*might* be some reasonable doubt" is in my opinion far short of "a clear indication" that his mind confronted and ruled upon the question of the defendant's guilt or innocence in the absence of polygraph evidence.

Let it be assumed that the trial court made an error in admitting evidence, and/or as to the rule of law as to how that evidence should be considered, these basic propositions remain: that upon consideration of the evidence then before it, the court found the defendant guilty beyond a reasonable doubt; and that neither that court, nor any trier of the facts, has passed upon, or had an opportunity to pass upon the defendant's guilt or innocence in the absence of any such error.

The proper function of this Court is to determine whether there was any substantial and prejudicial error and, if so found, to remand for a trial in the absence thereof to assure the defendant of a fair trial and a proper consideration of his guilt or innocence in the absence of such error.[1]

In order to avoid convicting the innocent, there can be no doubt about the essentiality of affording one accused of crime all of the

1. See *Cobb v. Snow*, 14 Utah 2d 170, 380 P.2d 457; *State v. Lawrence*, 120 Utah 323, 234 P.2d 600; *United States v. Ewell*, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627.

rights and protections provided by law. The other side of that coin is that the court should be equally concerned with the interests of the victim, her family and the public, who are also entitled to fair treatment.[2] In order to guard against the possible freeing of a man who may be guilty of a crime of brutal violence, there ought to be a forthright confrontation and determination of that critical issue. Both our statutory and decisional law enjoin that there should be no nullification of such a judgment merely because there may have been some error or irregularity in the trial.[3]

The safeguarding of the interests of both the defendant and of the public require that there be full and fair opportunity on both sides for a proper consideration of the evidence and a determination of the question of guilt or innocence. Consequently, I think the interests of justice would best be served by remanding this case for the accomplishment of that purpose.

HALL, J., concurs in the views expressed in the dissenting opinion of CROCKETT, C. J.

---

2. *State v. Seymour*, 18 Utah 2d 153, 417 P.2d 655 and authorities therein cited.

3. That upon determination of prejudicial error the defendant is entitled to a new trial, but not to dismissal of the case, see 77–42–1, U.C.A. 1953; *State v. Jaramillo*, 25 Utah 2d 328, 481 P.2d 394. See also statement by Justice Cardozo in *Snyder v. Mass*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674.