STATE

v.

David L. WALTERS.

No. 87–503–CA.

Supreme Court of Rhode Island.

Dec. 9, 1988.

James E. O'Neill, Atty. Gen., Jane McSoley, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the defendant, David L. Walters, from a judgment of conviction following a jury trial in Superior Court for second degree murder in the shooting death of Cornelius A. Riess, Jr. The defendant urges several grounds in support of his appeal. We need consider only one.

The defendant argues that the trial justice committed error by permitting the state to introduce evidence of a "trajectory check" conducted by Detective Sergeant Lawrence Campion of the East Greenwich police department. Detective Sergeant Campion testified that through the use of this so-called trajectory check he was able to determine the path of the bullet and, ultimately, where Walters was standing when the fatal shot was fired. Because the trajectory check lacks any scientific basis or indicia of reliability, we reverse. The facts of the case that are substantially undisputed are as follows.

At about 7:30 p.m. on November 28, 1984, Dennis St. Lawrence and Cornelius A. Riess, Jr., met at St. Lawrence's home. They had a beer before leaving for a liquor store where they cashed a small check and bought a six-pack of beer and a bottle of Schnapps. After consuming a couple of beers en route to the Rhode Island Mall, they went to Sears to buy a battery for Riess's car. From there, they went to Shenanigan's, a bar in East Greenwich, where they had a few more drinks and met Walters. St. Lawrence and Walters had been previously acquainted, and St. Lawrence introduced Walters to Riess. As they drank and conversed, Riess stated that he was carrying a check in the amount of more than $460 that he wanted to convert to cash. Walters informed Riess that the bartender at Shenanigan's probably would not cash a check that large and offered to cash the check for him. Walters explained that he could deposit the check into his account through an automatic teller, withdraw $300 in cash, and give Riess his personal check, less a $10 fee, for the balance. The trio proceeded to a nearby automatic teller at the Old Stone Bank.

Unable to retrieve more than $150 in cash, Walters then offered to pay Riess the balance of the value of his pay check by writing a check from his own account. Riess was reluctant, and Walters was somewhat agitated by Riess's apparent lack of trust in him. In any event they all agreed to go to Walters' house at 40 Power Street, East Greenwich, to continue the negotiations. Soon after their arrival and as they continued their beer drinking, the discussion escalated into a more heated exchange, and Walters momentarily left the dining area, only to return shortly thereafter with a loaded .357 caliber magnum that he either handed to or placed on the table in front of St. Lawrence. Not believing that Walters would bring a loaded gun into the already charged atmosphere, St. Lawrence decided to test the gun by firing

it into the floor. St. Lawrence testified that after the gun actually fired, he removed the bullets and returned the gun to Walters.

At this point the evidence diverges. According to St. Lawrence, he and Riess made a hasty exit from the dwelling. They got into Riess's car. After a slight delay Riess located his keys and began to back the car out of the driveway. At this point Walters emerged from the house, assumed a combat position in the driveway, carefully aimed his pistol, and fired a shot through the windshield of the car. The shot struck Riess in the chest, and after driving a short distance, he collapsed at the wheel and died thereafter.

Walters, who testified in his own behalf, recited a different version of these events. He testified that Riess left the dwelling and returned with a pair of combat devices known as nunchucks. Walters testified that Riess beat him with the nunchucks and knocked him to the floor. Thereafter, according to Walters, Riess and St. Lawrence left the house and got into Walters' vehicle. Walters took his gun[1] and went out into the driveway to remonstrate with St. Lawrence and Riess for being in his car. Thereupon Riess and St. Lawrence moved to the Riess car and began to back out of the driveway. At this point, when Walters was beside the car, attempting to communicate with Riess, he was struck by the side of the car in such fashion that not only did the car run over his foot but the gun accidentally discharged as he fell.

Thus a major factual issue in this case was whether Walters assumed a combat position to improve his aim and purposefully and deliberately fired at the Riess automobile, as St. Lawrence testified, or whether, as Walters testified, the gun accidentally discharged when he was struck by the automobile from a position beside the car as it pulled out of the driveway.

During the trial the prosecutor was permitted over objection to elicit testimony from Detective Sergeant Campion regarding the trajectory check he performed. He testified that he took a piece of string or rope and started it at the point in the driver's seat at approximately the height of the chest wound. He carried the string across the seat, passed it through the bullet hole near the inspection sticker on the passenger's side of the windshield, and drew it out beyond the passenger side fender of the car. Campion testified that by extending the rope out eight feet beyond the windshield, the rope would reach the approximate shoulder height of a man five-foot-eleven-inches tall. His testimony supported that of St. Lawrence, that is, that Walters was standing in front of and some distance away from the car when the shot was fired.

Over defendant's objection the trial justice allowed Campion to describe his "test" procedure and results. The trial justice indicated that Campion was not testifying about his expertise in firearms but was merely indicating "the flight of the projectile." Because this trajectory check lacked any scientific basis and because a jury might be inclined to give weight to the apparent opinion testimony of a seasoned and experienced police officer describing his investigative methods, we hold that its admission constituted reversible error.

This evidence would have no probative value whatever unless the jurors were allowed to infer that (1) the trajectory check was scientifically adequate to indicate the location from which the shot was fired and (2) Campion had special qualifications to conduct such an experiment and to base an opinion thereon. The state did not establish either of these threshold requirements of relevance and competence. Although the state argues that the trajectory check constituted neither a scientific demonstration nor an expert conclusion, it is manifest that if it fit into neither of these categories, it would be totally irrelevant. It would then not tend to prove or disprove the

---

1. Walters testified that the gun had been on the hutch in the living room for years, untouched, and that he was unaware that the gun was loaded when he presented it to St. Lawrence. Walters denied that he saw St. Lawrence unload the gun or that he (Walters) ever reloaded the gun prior to leaving the house.

existence of a fact in issue in the case. *See, e.g., Abbey Medical/Abbey Rents, Inc. v. Mignacca,* 471 A.2d 189 (R.I. 1984); *Lacey v. Edgewood Home Builders, Inc.,* 446 A.2d 1017 (R.I. 1982); *State v. Barnville,* 445 A.2d 298 (R.I. 1982); *Capezza v. Hertz Equipment Rental Corp.,* 118 R.I. 1, 371 A.2d 269 (1977).

■ Consequently, if the evidence were to meet the threshold requirements of relevance, it would do so by virtue of its probative value in establishing in a reliable manner the probable flight path of the fatal bullet from point of origin to the point where it struck the victim as he backed his car out of the driveway. Matters concerning ballistics and trajectory are generally not within the common knowledge of the average person. *See State v. Benton,* 413 A.2d 104, 112–13 (R.I. 1980). If opinion evidence is to be submitted in respect to such an issue, it would be by virtue of the special knowledge, skill, or information of the witness. Only then could the witness serve as an aid to the jury in its resolution of the factual issues in dispute. *State v. Wheeler,* 496 A.2d 1382 (R.I. 1985); *Morgan v. Washington Trust Co.,* 105 R.I. 13, 249 A.2d 48 (1969).

■ Since the witness in the case at bar purported to describe a test or demonstration designed to track a bullet's trajectory, it would be necessary to determine whether such a test has sufficient indicia of reliability so that it will contribute to the search for truth as opposed to exercising its potential to mislead the jury. The trial justice must determine that the value to be derived from the proposed testimony justifies the admission of the opinion evidence. *Morgan,* 105 R.I. at 18, 249 A.2d at 51. The trial justice must also give due consideration to the natural tendency of jurors to place greater weight on the testimony of one who appears to be qualified as an expert. *Wheeler,* 496 A.2d at 1388.

■ We have often stated that this court has been open to evidence of developments in science that would tend to assist the trier of fact. "This court has never been hostile to the proof of fact by evidence relating to scientific tests or experiments."

*State v. Dery,* 545 A.2d 1014, 1017 (R.I. 1988); *Wheeler,* 496 A.2d at 1388; *Powers v. Carvalho,* 109 R.I. 120, 125, 281 A.2d 298, 300 (1971).

However, we have rejected efforts to utilize testimony concerning unreliable tests lacking in true probative value for any purpose. *Dery,* 545 A.2d at 1017. We are mindful of the requirement that in order to be admitted, a purported scientific test must be of "substantial probative value." *Montuori v. Narragansett Electric Co.,* 418 A.2d 5, 10 (R.I. 1980).

The state argued at the time this evidence was presented to the trial court that it was not really expert testimony or scientific evidence. This argument compels us to the conclusion that such opinion evidence should not have been allowed under any theory. We have characterized opinion evidence offered by police officers on matters that did not warrant expert testimony as the placing of unnecessary and irrelevant evidence before the jury. *State v. Desmarais,* 479 A.2d 745, 748 (R.I. 1984); *State v. Nicoletti,* 471 A.2d 613, 617 (R.I. 1984).

■ In these latter cases we determined that permitting the introduction of opinion evidence on subject matter that encroached upon the jury's function in determining the credibility of witnesses constituted reversible error. We are constrained to a similar conclusion in the case at bar. The trial justice has no discretionary power to permit non-expert opinion evidence that would be perceived by the jurors as having an aura of scientific expertise and be used by them to resolve a crucial and disputed issue in the case.

We should note in passing that a later witness in the case, James E. McDonald, director of the crime laboratory for the police department of the city of Waterbury, Connecticut, and a former lieutenant commander of the Connecticut State Police Crime Laboratory (who apparently had significant qualifications in the field of ballistics based on 40 years of study and experience), testified that one cannot "determine trajectory by running a line through a window hole, when a projectile terminated its

flight by going through glass. That cannot be done that way." Although this expert testimony might be argued to have rebutted the testimony of Detective Sergeant Campion, it could not be said to have cured the misleading effects of an experiment that had not even a scintilla of indicia of reliability to support its admission. The witness was not competent to give an opinion.[2] The experiment or demonstration to which he testified was meaningless, but as in *State v. Desmarais* and *State v. Nicoletti,* we cannot wholly discount the strong probability of its having a misleading effect upon the jurors.

In light of our determination of this issue, it is unnecessary to respond to other issues raised by the defendant.

For the reasons stated, the defendant's appeal is sustained, the judgment of conviction is hereby vacated. The papers in the case are remanded to the Superior Court for a new trial.

---

**2.** This case was tried in February 1987. Therefore, Rhode Island Rules of Evidence made effective October 1, 1987, were not applicable. However, Rule 702 would not have changed the result of this opinion. Rule 702 states unequivocally:

"Testimony by experts.—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

In the case at bar it is clear on this record that Detective Sergeant Campion had no scientific, technical, or other specialized knowledge and that his trajectory check had utterly no basis in reliability that would meet the threshold test of admissibility. *See United States v. Williams,* 583 F.2d 1194 (2d. Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979), in which the court applied criteria for admissibility of a spectograph test under Federal Rule 702 (identical to Rhode Island Rule 702) which included "probativeness, materiality, and reliability of the evidence, on the one side, and any tendency to mislead, prejudice, or confuse the jury on the other * * *." 583 F.2d at 1198.