347 A.2d 615.

STATE *vs.* MICHAEL CAPONE.

NOVEMBER 20, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. On March 6, 1972, the Grand Jury returned an indictment[1] charging that the defendant:

"* * * did unlawfully accept a gift and gratuity from Robert Byrne, a person who gave, offered and promised said gift and gratuity with intent to influence improperly the conduct of said Michael Capone, alias John Doe, in the running and promotion of a horse race, the said Michael Capone, alias John Doe, then and there being a trainer of race horses, in violation of the provisions of Title 11, Chapter 7, Section 10 of the General Laws of Rhode Island, 1956, (Reenactment of 1969)."

The defendant pleaded not guilty and filed certain motions which were heard and denied. None of those motions is pertinent to this proceeding.

The case was heard before a justice of the Superior Court and a jury. The defendant filed motions for judgment of acquittal at the close of the state's case[2] and also at the close of all the evidence. The trial justice denied both. After the jury returned a verdict of guilty, defendant filed motions for arrest of judgment and for a new trial. These were denied; defendant was sentenced and judgment of conviction was entered. The sentence was stayed pending appeal to this court. The case is here on defendant's appeal from the judgment of conviction.

---

[1] The indictment was filed on April 6, 1972. The defendant was indicted under G. L. 1956 (1969 Reenactment) §11-7-10, a copy of which is attached to this opinion as an appendix.

[2] Since this motion was made at the close of the state's case without defendant first resting his case, it was addressed to the trial justice's discretion and is not appealable. *State* v. *Franklin*, 103 R. I. 715, 729, 241 A.2d 219, 228 (1968).

## The Facts

The state's principal witness, Robert Byrne, testified as follows. On the evening of March 16, 1971, and the morning of March 17, 1971, he met in a motel in Pawtucket with certain named individuals from whom he received a list of names. He then proceeded to the stable area of Lincoln Downs Racetrack. He had with him a list of names of horse trainers whose horses were stabled in the area and he was carrying in his jacket pocket 12 hypodermic needles and syringes, each of which he had filled with a liquid drawn from bottles labeled "Acepromazine."

While in the stable area Byrne approached two racehorse trainers and to each he announced, "I'm Bob, Adolph sent me." He then proceeded to inject their horses with the needles and syringes he was carrying. He then approached a third trainer whom he identified as defendant and asked him if he was Michael Capone. Receiving an answer in the affirmative, Byrne said to defendant, "I'm Bobby, Adolph sent me." The defendant then asked "where the $200 was." Byrne answered "I don't know nothing about any $200. I get paid to hit the horses, you'll have to take that up with him — with them. I'm here to hit that horse one way or another, with you or without you." After some further conversation, defendant said he would inject his horse himself. Byrne then handed one of the syringes to defendant and watched as defendant injected it into the neck of the horse. The defendant made inquiry regarding the "live combinations" and was told that "they'll tell you in time." After leaving defendant, Byrne met one of the men he had met in the motel in Pawtucket. This man gave him a sum of money and asked Byrne to pay $200 to each trainer, including defendant. Later that day Byrne paid the $200 to defendant.

The defendant testified in his own defense. He denied knowing Byrne, ever receiving anything from him and denied injecting anything into the horse.

## I

The defendant's first contention is that the trial justice erred in denying the motions for acquittal. As pointed out in note 2, *supra,* the denial of the motion made at the close of the state's case is not before us. The only question here is whether the trial justice erred in denying the motion for acquittal made at the close of all the evidence.

The defendant bases his argument on two grounds: first, that the state has failed to prove an essential element of the charge, namely, any intent on the part of Bryne to influence improperly defendant's conduct by gift or gratuity; and, second, that the $200 given to defendant could not constitute a "gift under G. L. 1956 (1969 Reenactment) §11-7-10 as the money was paid after the horse was injected.

Before passing on the merits of defendant's contention, it may be helpful to discuss briefly the standard to be applied in passing on a motion for judgment of acquittal made pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure. Although Rule 29 changes the nomenclature of this motion from directed verdict to motion for acquittal, the standard to be applied to the new motion for judgment of acquittal remains the same. In considering such a motion, the trial justice must view the evidence in a light most favorable to the prosecution, give full credibility to the prosecution's witnesses, and draw from the evidence every reasonable inference consistent with guilt. *State* v. *Howard,* 114 R. I. 731, 339 A.2d 259 (1975).

With this standard to guide us, we review the trial justice's ruling.

The trial justice passed on the precise issues raised by defendant. With respect to the question of intent, after reviewing Byrne's testimony in some detail, he concluded that the state had presented ample evidence from which the jury could infer that Byrne intended to influence defendant's conduct in the running of the first race on March 17, 1971. The evidence supports his finding on this issue; defendant's argument to the contrary is without merit and requires no further discussion.

The trial justice also passed on defendant's argument that the $200 payment to defendant after all the horses were "hit" could not be described as a payment with intent to influence defendant's conduct. In ruling against defendant's argument the trial justice said that the record clearly showed defendant's expectancy of payment and further that defendant was in fact paid. The trial justice ruled that the law forbids acceptance of a gift or gratuity intended to influence the running of a horserace. He found that although the gift to defendant followed the administration of the injection, it was clear that the injection was given with the expectation that the trainer would be entitled to a *quid pro quo,* namely, $200 and information regarding the "live combinations" for that race or other races. The trial justice felt that both the money and the information regarding the "live" (undrugged) horses were of value to defendant and that both fulfilled the definition of gift or gratuity within the Act. He concluded on the basis of the foregoing that the state had presented sufficient evidence to support a finding of guilt beyond a reasonable doubt and therefore denied defendant's motion for judgment of acquittal.

The weakness of defendant's argument on this point is apparent. There is nothing in the language of §11-7-10 prescribing the time when the gift or gratuity must be made, but there is competent evidence in the record to

support the trial justice's finding that the $200 payment was made with intent to influence defendant's conduct, even though the money was paid to defendant after all the horses were "hit." We find no error in the denial of defendant's motion for judgment of acquittal.

## II

We consider next defendant's contention that the trial justice erred in denying the motion to dismiss on the ground that §11-7-10 is unconstitutional. He argues that the statute under which he has been convicted is unconstitutional because it is so vague and lacking in ascertainable standards of guilt that, as applied to defendant, it fails to give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." He cites *United States* v. *Harriss*, 347 U. S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954) and *Palmer* v. *City of Euclid*, 402 U. S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971). Specifically, he argues that the words "conduct" and "improperly" are so vague and indefinite in meaning that they render the statute unconstitutional. Further he argues that trainers are not involved in the running of a horserace; that "running * * * of such horse race" means from the starting gate to the finish line; and that any use of the words "running * * * of such horse race" that would include preparation of, formal entry into, etc., would reflect a species of equivocalness which would render the statute obviously vague. For the reasons that follow we find no merit in any of defendant's arguments on this issue.

Statutes enacted by the General Assembly are presumed to be constitutional in form and in application, *State* v. *Lerner*, 112 R. I. 62, 88, 308 A.2d 324, 340 (1973), until they are shown to be unconstitutional beyond a reasonable doubt, *In re Buxton*, 111 R. I. 480, 483, 304 A.2d 350, 352 (1973), and the burden of establishing the un-

constitutionality of a statute rests on the party who is challenging the constitutionality of the statute, *State* v. *Lerner, supra.* The mere assertion that a statute is vague, without supporting authority, is not sufficient to sustain a challenger's burden of proof. *State* v. *Berker,* 112 R. I. 624, 630, 314 A.2d 11, 15 (1974).

Has defendant here sustained his burden of proving §11-7-10 unconstitutionally vague and indefinite? We answer this question in the negative for the simple reason that, in our judgment, the pertinent language of §11-7-10 is clear, definite and unambiguous. The relevant portion of §11-7-10 reads as follows:

> "Any * * * trainer * * * or other person participating in any horse race, or in any manner engaged in conducting, arranging or promoting any horse race * * * who accepts any gift or gratuity, directly or indirectly, from any person who gives, offers or promises any such gift or gratuity with intent to influence improperly the conduct of such person in * * * the running or promoting of such horse race * * * shall be punished * * *."

The words used in a statute must be given their ordinary literal meaning, unless a different meaning is obvious on the face of the statute. *Andreozzi* v. *D'Antuono,* 113 R. I. 155, 158, 319 A.2d 16, 18 (1974); *Podborski* v. *Haskell Mfg. Co.,* 109 R. I. 1, 8, 279 A.2d 914, 918 (1971).

The defendant argues that the words "improperly," "conduct," and "conduct of such person (trainer) in the running of a horse race" [sic] are vague and indefinite, but he fails to point out wherein they are unconstitutionally vague and indefinite. We fail to perceive wherein the words "improperly" and "conduct" as used in the statute are vague or indefinite. With respect to defendant's argument regarding the words "running of a horse race," we agree with the trial justice's treatment of this issue and we adopt his analysis where he said:

"* * * that there are many people involved in the running and promoting of a horse race. I would not place a restrictive definition on the meaning of the word running as it is used in this expression. It seems to me that it only makes sense to assume that the legislature intended to assure that racing in Rhode Island was run honestly and fairly. Trainers, grooms, jockeys and owners are just as involved in the necessary and correct running of a horse race as are the starters, the judges, and the stewards."

In our judgment the words of the statute are sufficiently clear to apprise an individual of the activities proscribed thereby.

## III

We address ourselves next to defendant's contention that the trial justice erred in permitting Byrne to testify over defendant's objection that the substance used in the syringes was taken from bottles of "medication"; that the label on the bottles said "Acepromazine"; that he injected Acepromazine in a horse's neck; that he conducted experiments with "Acepromazine"; that the experiments showed the results on a horse injected with Acepromazine; and that such a horse "* * * wouldn't be at his expected form, whatever, he just wasn't capable of running his race that he's supposed to run."

With respect to defendant's objection to the use of the word "medication," the transcript shows that during direct examination, Byrne referred to the substance used in the syringes as "medication." The defendant's motion to strike was denied by the trial justice on the ground that it was only the witness's understanding of what the substance was and that he was subject to cross-examination. We find no error in this ruling.

Nor do we find any merit to defendant's argument that Byrne's testimony that the label on the bottles said "Acepromazine" was inadmissible as hearsay. We agree with the state's observation that there is nothing in the

transcript indicating that this testimony was admitted as proof of the identity of the substance in the bottle. Byrne's testimony went only to the proof of the existence of the label on the bottles and was not offered to prove the accuracy or truth of the legend on the label itself. In the circumstances it was not inadmissible as hearsay. *State* v. *Palmigiano*, 112 R. I. 348, 359, 309 A.2d 855, 861-62 (1973).

The defendant next argues that since Byrne at no time testified as to any qualifications as an expert in any field, it was error to permit him to give an opinion as to the effects of the injected substance when injected into horses and to base that opinion on experiments which he had conducted.

The narrow issue raised by this objection is whether the trial justice erred in permitting Byrne to give expert testimony on this subject. As we said only recently the question of whether a witness may give expert testimony on a particular subject is properly addressed to the sound judicial discretion of the trial justice and will not be disturbed by this court except for abuse of discretion. *State* v. *Cochrane*, 114 R. I. 710, 339 A.2d 256 (1975). Thus, the only question here is whether the trial justice abused his discretion.

The transcript indicates that the trial justice based his ruling on the fact that a proper foundation had been laid for the introduction of Byrne's testimony. Byrne had testified that he had been around racetracks and observing horses for about 17 years; that he had injected between 150 and 200 horses with Acepromazine over a 3-year period; and that he had conducted many dosage experiments with Acepromazine, and had observed the horses run both before and after injection.

On this record we find no abuse of discretion. The cases cited by defendant, that is, *State* v. *Nagle*, 25 R. I. 105,

54 A. 1063 (1903); *State* v. *Gregoire,* 88 R. I. 401, 148 A.2d 751 (1959); *Powers* v. *Carvalho,* 109 R. I. 120, 281 A.2d 298 (1971), are of no help to defendant.

## IV

The defendant's final contention is that the trial justice erred in sustaining the state's objection to a question posed to Byrne on cross-examination regarding his place of residence. He relies on *Alford* v. *United States,* 282 U. S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), and *Smith* v. *Illinois,* 390 U. S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). In *Alford* the Court held that it was an abuse of discretion for the trial justice to refuse to allow cross-examination of the government's witness respecting his residence where the accused suspected that the witness was detained in custody of federal authorities. *Smith* v. *Illinos, supra,* extended the principle of *Alford* to state courts.

We agree with the general rule that, without any obligation to explain the purpose of his questioning, a defendant has a constitutional right, under the sixth and fourteenth amendments to the Federal Constitution, to ask a prosecution witness his present place of residence. *Alford* v. *United States; Smith* v. *Illinois,* both *supra.*

However, as Mr. Justice White pointed out in his concurring opinion in *Smith* v. *Illinois, supra* at 133-34, 88 S.Ct. at 751, 19 L.Ed.2d at 960:

> "In *Alford* v. *United States,* 282 U. S. 687, 694, [51 S.Ct. 218, 220, 75 L.Ed. 624, 629] (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of

why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling."

In discussing this question only two years ago, the Supreme Judicial Court of Massachusetts said in *Commonwealth* v. *McGrath,* 364 Mass. 243, 251, 303 N.E.2d 108, 113 (1973):

"Consistent, however, with the view expressed in the concurring opinion of Mr. Justice White in *Smith* v. *Illinois, supra,* 390 U. S. at 133-134, 88 S.Ct. 748 (1968), to the effect that consideration of the safety of the witness might justify nondisclosure of his present address, an exception has evolved to the general requirement of disclosure of the witness's present place of residence."

In pressing his right to ask the question in the present case, defendant's counsel expressly stated to the trial justice that he desired the witness's address for background purposes, whereupon the trial justice ruled as follows:

"I think the whole question with reference to the fact that this defendant is in protective custody and a showing of what facilities are afforded him by the federal government, what provisions are made to take care of his family, whether or not these things constitute reward, I think are all open for cross examination to show the possibility of bias or prejudice. In view, however, of Mr. Ryan's assertions that he is moved from place to place while he's in protective custody, I think that the relevance is substantially limited. I'll sustain the State's objection to the question as it is presently posed."

The "personal safety" exception to the *Alford/Smith* rule has received wide judicial recognition. *See, e.g., United States* v. *Alston,* 460 F.2d 48, 52 (5th Cir.), *cert. denied,* 409 U. S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972); *United States* v. *Saletko,* 452 F.2d 193, 196 (7th Cir. 1971), *cert. denied,* 405 U. S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581

(1972); *United States* v. *Perisco*, 425 F.2d 1375, 1383 (2d Cir.), *cert. denied,* 400 U. S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970).

Under the *Alford/Smith* rule, when a defendant, through cross-examination, has had sufficient "opportunity to place the witness in his proper setting" or to "[identify] the witness with his environment," *Alford* v. *United States, supra* at 692, 693, 51 S.Ct. at 219, 220, 75 L.Ed. at 628, and when a defendant has failed to show that harm has resulted from the concealment of the witness's address or place of employment, nondisclosure of such information will be upheld. *Commonwealth* v. *McGrath, supra* at 251-52, 303 N.E.2d at 113-14.[3] These requirements were satisfied in the case at bar. Byrne testified on direct examination as to where he was living at the time of the incidents charged in the indictment. On cross-examination defendant's counsel elicited information as to how long the witness had been living at his then current address and what type of work he was engaged in. With respect to the question of Byrne's credibility, counsel also secured testimony regarding the fact that Byrne was receiving a subsistence fee from the federal government and that he had been granted immunity from prosecution. Byrne also testified on cross-examination that he had requested government protection because of threats to his life and the lives of his family.

Thus, the record indicates that cross-examination of

---

[3]In dictum, a recent Massachusetts case further defined this rule and framed it as a balancing test whereby the trial justice weighs the defendant's need for the desired information against the prosecution's showing of a need for nondisclosure. *Commonwealth* v. *Johnson,* Mass., 313 N.E.2d 571, 578 (1974). Citing *Commonwealth* v. *McGrath, supra,* the *Johnson* court stated that "* * * refusal without inquiry or reason to permit a question about a witness's address would generally work a denial of the defendant's constitutional right of confrontation." *Commonwealth* v. *Johnson, supra,* 313 N.E.2d at 578.

Byrne was restricted only with regard to the place of his current address and that of his business. We agree with the state's claim that in spite of the prosecutor's assertion as to the need for the exclusion of such testimony, the defendant presented no compelling reason for its inclusion and has failed to demonstrate that any harm resulted from its concealment. In the circumstances we hold that this case falls within the "personal safety" exception to the general rule of cross-examination. *Commonwealth* v. *McGrath, supra* at 250-52, 303 N.E.2d at 113-14 (1973).

The defendant's appeal is denied and dismissed, judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

## Appendix

11-7-10. Acceptance of bribe by sports participant or official.—Any player, coach, manager, official or other person engaged in the playing, arranging or promotion of any such amateur or professional athletic game or contest, or officiating thereat, or any owner, trainer, groom, jockey, racing official or other person participating in any horse race, or in any manner engaged in conducting, arranging or promoting any horse race, or officiating thereat, who accepts any gift or gratuity, directly or indirectly, from any person who gives, offers or promises any such gift or gratuity with intent to influence improperly the conduct of such person in the arranging, holding or playing of such athletic game or contest, or officiating thereat, or the running or promoting of such horse race, or officiating thereat, shall be punished by a fine of not more than one thousand dollars ($1,000) or by imprisonment of not more than two (2) years, or by both such fine and imprisonment.

*Julius C. Michaelson,* Attorney General, *William Granfield Brody,* Special Asst. Attorney General, for plaintiff.

*Joseph L. Breen, Philip J. Murphy,* Fitchburg, Mass., for defendant.