May 27, 2020

**Supreme Court**

No. 2018-114-Appeal.
(PC 16-808)

Federal Hill Capital, LLC et al.  :

v.  :

City of Providence, by and through its  :
  Treasurer, James Lombardi, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Federal Hill Capital, LLC et al.      :

                v.                 :

City of Providence, by and through its     :
    Treasurer, James Lombardi, et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**   Does an amendment to a zoning ordinance which

restricts the number of college students who may live together in single-family homes in certain

residential areas in Providence violate the constitutional rights of owners of property or of college

students who rent those properties?   The plaintiffs, Federal Hill Capital, LLC, a real estate

investment company, and four individuals who were college students and housemates leasing

Federal Hill Capital's property located on Oakdale Street in the Elmhurst neighborhood at the time

this lawsuit was brought, ask this Court to answer that question in the affirmative.[1]   However,

because we are convinced that the challenged amendment to the City of Providence's zoning

---

[1] The named plaintiffs in this case are Federal Hill Capital, LLC, Christopher Musacchio, Alejandro Amaya, William Smith, and Corey Kossin.  The named defendants are the City of Providence, by and through its Treasurer, James Lombardi; Jorge Elorza, in his official capacity as mayor of Providence; and Jeffrey L. Lykins, in his official capacity as Director of the Providence Department of Inspection and Standards (collectively the City).

ordinance does not violate the plaintiffs' right to equal protection or due process under the Rhode Island Constitution, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

In July 2015, the Providence City Council Committee on Ordinances held a public hearing to consider an amendment to the City's zoning ordinance that would regulate residences which house students. A plethora of correspondence was submitted to the City Council for its consideration on the issue. That correspondence reflected that community members were upset with the impact that student housing has had on their neighborhoods. For example, one Mt. Pleasant/Elmhurst community member wrote:

> "Our neighborhood has always been a place that inspires people to put down roots and make a permanent commitment to Providence. We fear this may no longer be true. Noise, crowding, public drunkenness, traffic around the clock, parking problems, an increase in crime, threatened real estate values, absentee ownership, a transient population, lack of safety for the students themselves due to ill-maintained and out-of-code properties and unsupervised living conditions: these are all fast becoming the norm."

Another described what he termed "the recent and terrifying development of student-oriented landlords buying the single-family houses in parts of the neighborhood populated primarily by families." He explained:

> "Obviously, the family-owned and occupied house is, and has always been, the heart of Elmhurst. * * * However, it has become common that when a house comes up for sale, or even before, it is snatched up by a landlord seeking to convert it into a student house, sometimes housing up to five or more students, often with a lawn turned into a parking lot."

And yet another explained that "the climate [of the neighborhood] has now changed once the owners convert one family homes to multiple dwellings." He explained that a home near his

own home was "previously a one family home that has been converted to house multiple students" and that "[t]o accommodate the resident cars, a second driveway was installed" and "[t]here are regularly 8-10 cars parked at this location." That same community member also explained that, unfortunately: "On Sunday mornings I have had to pick up trash and red plastic cups in front of my house. I have had to wash urine off my driveway wall."

Approximately eight weeks after the public hearing at which these and other concerns were aired, the City enacted Ordinance No. 455, the amendment at issue in this case (Amendment).[2]

That Amendment impacts the R-1A and R-1 zoning districts, districts that, as represented by counsel for the City of Providence, make up less than three square miles of the City, and that are "intended for neighborhoods of lower density residential development" and "for detached single-family dwellings of low density residential developments[,]" respectively. City of Providence Zoning Ordinance §§ 4-400(A), 4-400(B) (Dec. 24, 2014). The Amendment itself states: "In the R-1A and R-1 districts, a single-family dwelling, that is non-owner occupied, shall not be occupied by more than three college students." *Id.* at § 12-1202(L)(5). The Amendment defines a college student as an "individual enrolled as an undergraduate or graduate student at any university or college educational institution who commutes to a campus." *Id.* at § 2-201.

Some five months later, in February 2016, Federal Hill Capital, LLC, the owner of a single-family home at 15 Oakdale Street in the Elmhurst neighborhood, an R-1 district, and the four plaintiff-college students who were then renting the property[3] (collectively Federal Hill Capital),

---

[2] The Amendment is codified at City of Providence Zoning Ordinance § 2-201 and § 12-1202(L)(5) (Dec. 24, 2014).

[3] While it is not wholly clear whether the four individual plaintiffs are still students, or whether any of them still reside at 15 Oakdale Street, it has been represented to the Court by counsel for the City of Providence that three of the four students now reside out of state. However, neither party contends that any issues raised by this case is moot. We agree. To the extent that any of the plaintiff-students are no longer sustaining injury by virtue of no longer being college students, the

- 3 -

filed a declaratory judgment action against the City in the Superior Court seeking to invalidate the Amendment, asserting that the City had violated the Due Process and Equal Protection Clauses of the Rhode Island Constitution.

In January 2017, the City filed a motion for summary judgment. In response, Federal Hill Capital objected and filed a cross-motion for summary judgment. A justice of the Superior Court heard argument on the cross-motions and, in time, issued a comprehensive twenty-page written decision rejecting Federal Hill Capital's motion for summary judgment and granting the motion of the City of Providence. In that decision, the hearing justice determined that the appropriate level of review to adjudicate the Amendment's constitutionality was rational basis review, the least searching of all constitutional standards. Employing that standard, the hearing justice, after first remarking that the Amendment to some extent seemed "nonsensical," in the end determined that the effectiveness of the legislation was "at least debatable" and that she must therefore find it to be constitutional. Judgment entered in favor of the City, and Federal Hill Capital filed a timely appeal.

Before this Court, Federal Hill Capital asserts that the justice of the Superior Court erred in failing to apply a heightened level of review when she evaluated the constitutionality of the Amendment. Federal Hill Capital also argues that, even if the Amendment's constitutionality is properly scrutinized using rational basis review, the Amendment nonetheless fails to meet constitutional muster because it is not rationally related to a legitimate government interest.

---

factual scenario raised by this case is clearly capable of repetition and evading review, and the issue is one to which the public deserves an answer. *See Cicilline v. Almond*, 809 A.2d 1101, 1105-06 (R.I. 2002) (explaining that the Court will evaluate the merits of cases that are "of extreme public importance, which are capable of repetition but which evade review" (quoting *Sullivan v. Chafee*, 703 A.2d 748, 752 (R.I. 1997))). Moreover, Federal Hill Capital is still claiming injury—the Amendment diminishes the company's potential pool of leasing applicants.

## II

### Discussion

The backdrop of this case presents us with a direct conflict between legitimate and competing interests. Longtime residents deserve quiet and peaceful neighborhoods in which to live and raise their families. On the other hand, investors are entitled to see a reasonable return on their capital and believe that, when they improve a home to make it lease-ready, they should not be punished for doing so. And, students often pursue the opportunity to further their education while residing with friends in an off-campus environment.

Recognizing these competing interests, we now delve into the issue of whether the Amendment before us violates the Equal Protection and Due Process Clauses of our state's constitution.[4] In so doing, we must first emphasize that in this state—indeed, in this country—it is the legislatures, not the courts, that make the law. When a party challenges the constitutionality of a statute, the burden is on him or her to demonstrate that the enactment is unconstitutional beyond a reasonable doubt. *Gem Plumbing & Heating Co., Inc. v. Rossi*, 867 A.2d 796, 808 (R.I. 2005); *cf. State v. Capone*, 115 R.I. 426, 432, 347 A.2d 615, 619 (1975) ("Statutes enacted by the General Assembly are presumed to be constitutional in form and in application[.]"); *State v. Lerner*, 112 R.I. 62, 88, 308 A.2d 324, 340 (1973) ("[I]t is well settled that state legislatures are presumed to have acted within their constitutional powers[.]").

With these precepts in mind, and with the recognition that we review a grant of summary judgment *de novo*, we proceed to our legal analysis. *See Narragansett Indian Tribe v. State*, 110 A.3d 1160, 1162 (R.I. 2015).

---

[4] Those clauses are found at article 1, section 2 of the Rhode Island Constitution, which says, in part: "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws."

## A

## Level of Constitutional Review

Our first task is to determine the appropriate level of scrutiny the Court should employ as we pass on the constitutionality of the challenged Amendment. *See In re Advisory from the Governor*, 633 A.2d 664, 669 (R.I. 1993).[5] "[W]here neither a suspect class nor a fundamental right is implicated, * * * the legislation properly is analyzed under a minimal-scrutiny test." *Riley v. Rhode Island Department of Environmental Management*, 941 A.2d 198, 206 (R.I. 2008). Under that test, commonly known as rational basis review, when evaluating the action against the equal protection guarantee of our constitution, "this Court will review the statute to [e]nsure that 'a rational relationship exists between the provisions of the statute [or ordinance] and a legitimate state interest.'" *Id.* (quoting *Cherenzia v. Lynch*, 847 A.2d 818, 825 (R.I. 2004) (brackets omitted)). Similarly, in evaluating the legislative action under substantive due process, the "plaintiff must show * * * 'that the government's action was clearly arbitrary and unreasonable[.]'" *Cherenzia*, 847 A.2d at 826 (quoting *Brunelle v. Town of South Kingstown*, 700 A.2d 1075, 1084 (R.I. 1997)). Needless to say, if a rational nexus exists between the statute and a legitimate state interest, the law is not arbitrary. Therefore, if the legislative action satisfies the Equal Protection Clause under an appropriate application of rational basis review, it will also satisfy substantive due process. *See In re Advisory from the Governor*, 633 A.2d at 672 ("Our holding in the first part of this opinion under our equal-protection analysis applies equally to the Governor's due-process claim."); *see also Minnesota v. Clover Leaf Creamery Company*, 449 U.S. 456, 470 n.12 (1981) ("From our

---

[5] The procedurally appropriate enactment of a zoning ordinance is a legislative action. *See* Rhode Island Zoning Enabling Act of 1991, G.L. 1956 chapter 24 of title 45, sections 27 through 72; *see also Cranston Police Retirees Action Committee v. City of Cranston*, 208 A.3d 557, 590 (R.I. 2019) (holding that the members of the city council and mayor acted in a legislative capacity in enacting city ordinances).

conclusion under equal protection * * * it follows *a fortiori* that the Act does not violate the Fourteenth Amendment's Due Process Clause.").

When a suspect class or a fundamental right is implicated, however, the Court will scrutinize the legislative action strictly and the action will survive only if it is "suitably tailored to serve a compelling state interest." *In re Advisory from the Governor*, 633 A.2d at 669 (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985)).[6]

As such, determining which level of review applies to the case is of paramount importance. If either (a) college students are a suspect class, or (b) the right at issue is fundamental, then strict scrutiny will apply. However, should both of these suppositions be false, rational basis review will apply. *See Mackie v. State*, 936 A.2d 588, 596 (R.I. 2007) ("[Where] the challenged statute

---

[6] Between these two extremes in the equal protection context is the ever-gray intermediate scrutiny, which applies for instance to legislative action that makes a distinction based on gender or illegitimacy, and where legislative action survives if it is "substantially related to a legitimate state interest." *In re Advisory from the Governor*, 633 A.2d 664, 669 (R.I. 1993). Although Federal Hill Capital primarily urges this Court to evaluate the Amendment against strict scrutiny, it also suggests that this Court could adopt a framework more demanding than rational basis review but less exacting than strict scrutiny, essentially advocating the use of intermediate scrutiny. We are, however, unconvinced that it is necessary to deviate from the rational basis review/strict scrutiny dichotomy in this circumstance. *Contra* Katia Brener, Note, *Belle Terre and Single-Family Home Ordinances: Judicial Perceptions of Local Government and the Presumption of Validity*, 74 N.Y.U. L. Rev. 447, 481-84 (1999) (arguing that state courts can and should, when "examining single-family home ordinances[,] * * * apply heightened scrutiny, or 'second order' rational basis review, which requires the government to establish that the classification is substantially related to important and legitimate objectives" (footnote omitted)).

It is also noteworthy that, in a case where strict scrutiny is the proper basis under which to examine a legislative act, the burden is no longer on the challenger to prove that it is unconstitutional beyond a reasonable doubt. *See Brown v. Entertainment Merchants Association*, 564 U.S. 786, 799 (2011) (putting the burden on the state to demonstrate that the legislation was "justified by a compelling government interest and [was] narrowly drawn to serve that interest").

does not impinge on a fundamental right, nor does it create a suspect classification, this Court will employ a rational basis test to determine whether it violates the Rhode Island Constitution.").[7]

**1**

**Are College Students a Suspect Class?**

Federal Hill Capital argues that college students should be considered to be a suspect class. It argues that the ordinance "diminishes the rights of an entire class of citizens based solely on their educational status" and that the ordinance is tantamount to legislating college students "into a kind of second-class citizen without all of the rights afforded to other residents of the City." It further argues that, given that Rhode Island values education, it is troubling that the ordinance "deprives college students of a right that every other citizen enjoys[.]"

Nevertheless, Federal Hill Capital has not presented us with any case, decided by any court, that has held that college students are a protected class. In fact, in one of the very few cases that Federal Hill Capital asserts advances its overall case, *Kirsch v. Prince George's County*, 626 A.2d 372 (Md. 1993), in which the highest court in Maryland struck down a zoning ordinance "regulating the rental of residential property to three or more students pursuing higher education," the court specifically stated that "[n]o fundamental right or suspect class has been infringed upon by the * * * ordinance's classification of housing on the basis of the occupation of the tenants." *Kirsch*, 626 A.2d at 373, 379. We agree. A class is considered to be a suspect class only if it has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *See Berberian v. Petit*, 118 R.I. 448, 453, 374 A.2d 791,

---

[7] Federal Hill Capital has largely argued this case in terms of the rights of college students, rather than examining those of landlords who lease property to students. We conduct our analysis based on the arguments presented.

794 (1977) (quoting *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28 (1973)).[8] It would be beyond peradventure to say that college students fit any of those descriptors.

As such, we decline Federal Hill Capital's invitation to deem college students a suspect class and to break with the considerable authority to the contrary. *See Bloomsburg Landlords Association, Inc. v. Town of Bloomsburg*, 912 F. Supp. 790, 805 (M.D. Pa. 1995) ("The federal courts have declined in the past to recognize college students as a suspect classification. There has been no showing here that college students generally, or those attending Bloomsburg University in particular, are members of a class toward which society has been, historically or irrationally, prejudiced."); *Smith v. Lower Merion Township*, Civ. A. No. 90-7501, 1992 WL 112247, at *2 (E.D. Pa. May 11, 1992) ([T]here is no showing that college students generally, or those attending local colleges in particular, are members of a class toward which society has been,

---

[8] The case of *Berberian v. Petit*, 118 R.I. 448, 374 A.2d 791 (1977), concerned whether a Rhode Island statute violated the federal constitution. *Berberian*, 374 A.2d at 792-93. Nevertheless, and although the equal protection and due process clauses of our constitution are independent from their federal counterparts in the Fourteenth Amendment, *see East Bay Community Development Corporation v. Zoning Board of Review of Town of Barrington*, 901 A.2d 1136, 1150 (R.I. 2006), because the protections our constitution provides are generally on par with the federal parallels in this area, *see id.*; *see also Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Company, Inc.*, 716 A.2d 730, 734 (R.I. 1998) ("Because [the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and the Rhode Island Constitution] provide for similar protections, a separate analysis is unnecessary."); *In re Advisory from the Governor*, 633 A.2d at 669, we see no reason to here redefine what makes a class suspect. Moreover, we have in the past adopted the language used by the United States Supreme Court in this area. *See Kaveny v. Town of Cumberland Zoning Board of Review*, 875 A.2d 1, 11 (R.I. 2005) (relying on a Fourteenth Amendment case for the proposition that members of a "discrete and insular minority" are entitled to the status of being inherently suspect (quoting *Trembley v. City of Central Falls*, 480 A.2d 1359, 1366 (R.I. 1984)); *Cherenzia v. Lynch*, 847 A.2d 818, 823 (R.I. 2004) (explaining that "[a] legislative classification also is suspect, and therefore subject to strict scrutiny, if the act in question discriminates based on 'race, alienage, or national origin'" (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985)); *see also Riley v. Rhode Island Department of Environmental Management*, 941 A.2d 198, 211 (R.I. 2008) (noting "race, alienage, or national origin" as suspect classes). A more complete discussion of the relationship between the Rhode Island Constitution and the United States Constitution is taken up in the main body of this opinion in the discussion *infra*, Part II.A.2.

historically or irrationally, prejudiced. Thus, the precondition for heightened scrutiny is not met."); *Davis v. Churchill County School Board of Trustees*, 616 F. Supp. 1310, 1313 (D. Nev. 1985) ("This Court could find no cases holding that students are a suspect class which would require us to view Nevada's statute with strict scrutiny."); *Rosenberg v. City of Boston*, No. 08 MISC 377101 (CWT), 2010 WL 2090956, at *6 (Mass. Land Ct. May 25, 2010) (explaining that "full-time students" do not constitute a suspect class "because [the class is] not based on sex, race, color, creed, or national origin"); *Lantos v. Zoning Hearing Board of Haverford Township*, 621 A.2d 1208, 1212 (Pa. Commw. Ct. 1993) ("[T]he Eastern District held that college students generally have not been historically prejudiced so as to require a heightened scrutiny for zoning."); *SPUR at Williams Brice Owners Association, Inc. v. Lalla*, 781 S.E.2d 115, 123 (S.C. Ct. App. 2015) ("[B]ecause college students have not faced a long history of discrimination, are not an insular minority, and have not been classified according to an immutable trait acquired at birth, a classification based upon an individual's status as a college student is not inherently suspect.").

**2**

**Is it a Fundamental Right to Reside with Whomever One Pleases,
Wherever One Pleases?**

Although we have determined that college students are not a suspect class, our inquiry into which level of constitutional review governs this case must also focus on whether a fundamental right is implicated. If so, strict scrutiny will apply notwithstanding the lack of a suspect class. *See In re Advisory from the Governor*, 633 A.2d at 669. Federal Hill Capital defines the question as: "[W]hether Rhode Islanders have a fundamental right to choose their living companions." In our opinion, this overstates the case. Considering that it is a zoning ordinance at issue which applies to less than three square miles of the state's most populous city, we are of the opinion that it is far

more appropriate to determine whether a fundamental right exists under our constitution to live with whomever one pleases, wherever one pleases, and in whatever configuration one chooses.

As we have observed in relation to the United States Constitution, fundamental rights include "explicit constitutional rights, such as those guaranteed by the First Amendment, or upon interests fundamental to our society of ordered liberty, such as the right to travel or to privacy[.]" *In re Advisory Opinion to House of Representatives Bill 85-H-7748*, 519 A.2d 578, 582 (R.I. 1987); *see State v. Germane*, 971 A.2d 555, 583 (R.I. 2009) (explaining that "[t]he United States Supreme Court has recognized that * * * fundamental rights include those guaranteed by the Bill of Rights as well as certain liberty and privacy interests implicit in the due process clause and in the penumbra of constitutional rights"). Moreover, "[a]lthough for the forty years between 1897 and 1937 the [United States] Supreme Court was quite willing to scrutinize and invalidate economic regulations under the due process clause, the [Supreme] Court today does not weigh the wisdom of state social and economic legislation[.]" *In re Advisory Opinion to House of Representatives Bill 85-H-7748*, 519 A.2d at 581 (footnote omitted); *see Germane*, 971 A.2d at 583 ("[I]t should be borne in mind that the United States Supreme Court has indicated that it is reluctant to expand the doctrine of substantive due process by recognizing new fundamental rights."). As the United States Supreme Court has explained, if that court interprets the United States Constitution to provide new fundamental rights in accordance with the personal views of its members, government would cease to be ruled by the people. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore 'exercise the utmost care whenever we are asked to break new ground

in this field,' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court[.]") (internal citations omitted).

Article 1, section 2 of our constitution "is parallel to section 1 of the Fourteenth Amendment [of the United States Constitution.]" *East Bay Community Development Corporation v. Zoning Board of Review of Town of Barrington*, 901 A.2d 1136, 1150 (R.I. 2006); *see also In re Advisory from the Governor*, 633 A.2d at 669. We also recognize that the facile recognition of new fundamental rights by the judiciary would subvert the democratic process. *See Germane*, 971 A.2d at 583 ("This Court is similarly reluctant to recognize heretofore unarticulated fundamental rights."). We have held that the United States Supreme Court's explication of fundamental rights also applies to our own Constitution. *See id.* (adopting the federal definition of fundamental rights in evaluating a claim that the Sexual Offender Registration and Community Notification Act violated the Due Process Clauses of both the Rhode Island and United States constitutions); *Cherenzia*, 847 A.2d at 823 (citing to United States Supreme Court precedent in explaining the contours of fundamental rights).

Federal Hill Capital does not assert that the right at stake is founded in the Bill of Rights, nor does it tie the right of people to live anywhere with anyone to any fundamental right that this Court has previously recognized. Instead, it emphasizes that it has brought its claim under article 1, section 2 of the Rhode Island Constitution and reminds us that this Court is free "to interpret our state constitution more broadly than the U.S. Constitution has been interpreted in similar cases elsewhere."

We need no reminder for that principle. Indeed, "[t]he equal-protection guarantees secured by the Fourteenth Amendment * * * in no way limit those protections Rhode Island citizens possess by nature of article 1, section 2." *Providence Teachers' Union Local 958, AFL-CIO, AFT v. City*

*Council of City of Providence*, 888 A.2d 948, 956 (R.I. 2005). That is so because, "[i]n adding an equal-protection clause to the Rhode Island Constitution in 1986, the drafters" sought "to protect the citizens of this state should the federal judiciary adopt a more narrow interpretation of the Fourteenth Amendment." *Id.* However, we also have said, in a case where both the Rhode Island Constitution and the United States Constitution were in play, that "[b]ecause article 1, section 2, of the Rhode Island Constitution is parallel to section 1 of the Fourteenth Amendment, we conduct a hybrid analysis that nevertheless reflects the autonomous character of each constitution's inviolable guarantees." *East Bay Community Development Corporation*, 901 A.2d at 1150. In essence, while it remains this Court's prerogative to interpret the Equal Protection and Due Process Clauses of the Rhode Island Constitution in a manner that diverges from, and is more protective than, the Supreme Court's interpretation of the United States Constitution, we would need to be presented with a good reason to do so. *See In re Advisory from the Governor*, 633 A.2d at 669 (explaining that "by applying the federal analysis in the equal protection area, we shall answer the Governor's question under both the United States and Rhode Island Constitutions").

In urging that we sidestep federal precedent, it is evident that Federal Hill Capital is aware that that precedent does not favor its argument. In *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974), six college students at Stony Brook University and their landlord brought an action to invalidate a zoning ordinance in operation in the Long Island Village of Belle Terre. *Village of Belle Terre*, 416 U.S. at 2-3. That ordinance prohibited more than two unrelated persons from living together in "one-family dwellings[.]" *Id.* at 2. The students and landlord fired a barrage of arguments:

> "[T]hat [the ordinance] interferes with a person's right to travel; that it interferes with the right to migrate to and settle within a State; that it bars people who are uncongenial to the present residents; that it expresses the social preferences of the residents for groups that will

- 13 -

be congenial to them; that social homogeneity is not a legitimate interest of government; that the restriction of those whom the neighbors do not like trenches on the newcomers' rights of privacy; that it is of no rightful concern to villagers whether the residents are married or unmarried; that the ordinance is antithetical to the Nation's experience, ideology, and self-perception as an open, egalitarian, and integrated society." *Id.* at 7.

The Court, however, rejected them all. *Id.* at 7-9.  In ruling against the landowner and students, the Court held: "[The ordinance] involves no 'fundamental' right guaranteed by the Constitution, such as voting, the right of association, the right of access to the courts, or any rights of privacy[.]" *Id.* at 7 (internal citations omitted).

Although Federal Hill Capital attempts to distinguish *Village of Belle Terre* on the ground that that case, unlike this case, did not specifically target college students, we believe that argument to be irrelevant when considering whether the right to live with whomever one chooses, wherever one chooses, is concerned.

Nonetheless, simply because federal precedent does not align with Federal Hill Capital's argument does not determine, in and of itself, that the right is not fundamental.  That is so because, again, article 1, section 2 of the Rhode Island Constitution stands independent from the federal Equal Protection and Due Process Clauses. *See East Bay Community Development Corporation*, 901 A.2d at 1150; *Providence Teachers' Union Local 958, AFL-CIO, AFT*, 888 A.2d at 956.

However, Federal Hill Capital has not presented us with sufficient reason to hold that the right at issue is fundamental, let alone a reason that would justify diverging from the rationale of *Village of Belle Terre*.  Federal Hill Capital's principal argument is that a justice of our Superior Court, over twenty-five years ago in *DiStefano v. Haxton*, 1994 WL 931006 (R.I. Super. Dec. 12, 1994), held that a zoning ordinance enacted by the town of Narragansett that restricted landlords from leasing properties in residential zones to no "more than three persons who are not related by

- 14 -

blood, marriage or adoption[,]" in the justice's opinion, "unlawfully burden[ed] the fundamental right of otherwise competent adults to live with whom they choose[.]" *DiStefano*, 1994 WL 931006, at *2, *14. He further ruled that there was no rational or compelling reason "to curtail such living arrangements[.]" *Id.* at *7.

There are two problems incumbent on Federal Hill's reliance on *DiStefano*. First, it is beyond argument that this Court is not bound by a decision of the Superior Court. Second, it is our opinion that the substantive due process analysis in *DiStefano* appears to be of the type that is frowned upon for supplanting, by judicial fiat, an enactment of an elected body.

The only other case that Federal Hill Capital presents to us that might support the notion that a fundamental right may be at issue in this case is an opinion by the Supreme Court of California in *City of Santa Barbara v. Adamson*, 610 P.2d 436 (Cal. 1980). In that opinion, the court, employing a strict scrutiny analysis, struck down a zoning ordinance that prohibited groups of more than five unrelated people from living together in a single-family residence zone. *City of Santa Barbara*, 610 P.2d at 437-38, 440, 442. That case, however, is inapposite because, as the City points out, the court there relied upon article I, section 1 of the California Constitution, which expressly provides for a broad right to privacy. *Id.* at 437, 439-40, 440 n.3 (explaining that "the federal right of privacy in general appears to be narrower than what the [California] voters approved in 1972 when they added 'privacy' to the California Constitution").[9]

---

[9] Although Federal Hill Capital also recognizes that *City of Santa Barbara v. Adamson*, 610 P.2d 436 (Cal. 1980), was grounded on this explicit right to privacy, it argues that "such a right can also be implicit in a state constitution" and urges us to find such a right as the hearing justice did in *DiStefano v. Haxton*, 1994 WL 931006 (R.I. Super. Dec. 12, 1994). Putting aside the fact that the right to privacy is hardly mentioned in *DiStefano*, that decision is not precedent. Indeed, justices of the Superior Court and of this Court should be cautious to deem previously-unrecognized rights as fundamental, "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences" of the justices. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). And, to the extent that Federal Hill Capital attempts to tie the right to live with whomever one pleases,

- 15 -

In light of the fact that Federal Hill Capital has failed to provide any convincing authority for the notion that a right to live anywhere with anyone exists, coupled with the fact that *Village of Belle Terre* rejects such a notion, and that the general idea flies in the face of the purpose of zoning as a concept in and of itself, *see Robinson v. Town Council of Narragansett*, 60 R.I. 422, 433, 199 A. 308, 313 (1938) (explaining that the police power includes the "power to reasonably regulate and restrict the use and the enjoyment of property by the owner in the public interests"), we are not persuaded that there exists any fundamental right under the facts of this case. Thus, and because the Amendment does not discriminate on the basis of a suspect classification, the proper level of constitutional review is rational basis review.

**B**

**Is the Amendment Rationally Related to a Legitimate State Purpose?**

Having established that rational basis review is the proper method by which to evaluate the Amendment, we now consider Federal Hill Capital's equal protection and due process claims under that standard. In the equal protection context, if "a rational relationship exists between the provisions of the statute [or ordinance] and a legitimate state interest[,]" the legislative action does not offend the Equal Protection Clause. *Riley*, 941 A.2d at 206 (quoting *Cherenzia*, 847 A.2d at 825) (brackets omitted). Further, should the Equal Protection Clause be satisfied in this manner, then the Due Process Clause is not implicated because, again pursuant to rational basis review, it follows that the statute cannot be deemed to be arbitrary. Therefore, we conduct one analysis.

---

wherever one pleases to an implicit right to privacy, we note that we have never held that the right to privacy is so broad as to elevate this kind of zoning issue to that of the highest constitutional import. Moreover, because Federal Hill Capital devotes almost no part of its brief to establishing a nexus between the right to privacy and, as it frames the case, "whether Rhode Islanders have a fundamental right to choose their living companions," we do not characterize Federal Hill Capital's argument as asserting a previously-recognized privacy right.

We have said in the past that, in determining whether the ordinance is rationally related to a legitimate state purpose, "if we can conceive of any reasonable basis to justify the classification, we will uphold the statute as constitutional." *Mackie*, 936 A.2d at 596 (quoting *Cherenzia*, 847 A.2d at 825). Moreover:

> "We have held that 'even if the Legislature had a constitutionally improper motive when it passed legislation, the legislation would still hold up to rational basis scrutiny if this Court could find any legitimate objective.'
>
> "Furthermore, in conducting this review it is wholly irrelevant whether this Court can rationally conclude that the legislation would resolve a legitimate problem. Rather, the proper inquiry is whether the General Assembly rationally could conclude that the legislation would resolve a legitimate problem. Indeed, 'the Equal Protection Clause is violated only if the legislative classification rests on grounds wholly irrelevant to the achievement of the [s]tate's objective. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'
>
> "In accordance with these standards, a party 'attacking the rationality of a legislative classification has the burden to negative every conceivable basis which might support it.'" *Id.* at 596-97 (brackets, deletions, internal citations, and emphasis omitted).

This is a very high bar and one that Federal Hill Capital must prove it has overcome beyond a reasonable doubt if it is to succeed in its appeal. *See Gem Plumbing & Heating Co., Inc.*, 867 A.2d at 808.

Has Federal Hill Capital cleared this hurdle? In its effort to do so, Federal Hill Capital has advanced a number of arguments for this Court to consider. It argues that "it is not credible that the Ordinance will have any impact on the problems it was purportedly enacted to address, or that the problems themselves actually exist." Further, it says that "[t]he City alleges that the purpose of the Ordinance was to aid the City in preserving the residential, family character of the Elmhurst and Mount Pleasant neighborhoods near Providence College and Rhode Island College" but that

"the City did not provide any credible evidence that single family homes housing more than three college students have been a significant source of complaints about noise, parking, public drinking or other similar issues."

Concerning the effectiveness of the Amendment, Federal Hill Capital argues that, in the Elmhurst neighborhood, there is no shortage of multifamily homes that have been grandfathered into the current framework, that many of those multifamily homes are rented to large groups of college students, and it is these homes that are actually creating the problem—not single-family homes renting space to students. Along similar lines, Federal Hill Capital asserts that, as enacted, the Amendment is not "a carefully thought out response to problems of noise or overcrowding or parties in single-family homes in residential neighborhoods" because a prior iteration of the ordinance targeted students in all dwellings, not simply single-family residences. Federal Hill Capital asserts that that prior iteration was abandoned due to lack of legislative support and that, through the process, the ordinance that was enacted "shifted from something that might have been effective but politically unachievable, to something that was palatable to the City Council but entirely unrelated to the goals that its sponsor originally set out to achieve."

The fact that the existing multifamily homes in the R-1 and R-1A zoning districts are not restricted in the same manner as the single-family homes is, of course, an argument that the ordinance is under-inclusive. Federal Hill Capital also makes the argument that the ordinance is over-inclusive because the ordinance does not just apply to typical undergraduate students but to graduate students, part-time students, "four divinity students," "or four unrelated adults who are taking part time college courses."

None of these arguments persuades us. Whether the City provided credible evidence that more than three college students living in single-family homes was the source of significant

- 18 -

complaints is irrelevant. That is so because the burden is on the challenger to convince us that a statute is unconstitutional. *See Mackie*, 936 A.2d at 597 ("[A] party 'attacking the rationality of a legislative classification has the burden to negative *every* conceivable basis which might support it.'" (brackets omitted) (quoting *Medeiros v. Vincent*, 431 F.3d 25, 32 (1st Cir. 2005))); *see also id.* (explaining that, under rational basis review, the proponent of legislation does not need "to support [its reasons for enacting it] with empirical evidence").

Also, that the City may have chosen to restrict college student housing in single-family homes after first considering a similar restriction that would be applicable to both single and multifamily homes is not enough to defeat the Amendment. That a legislative body may have initially considered more drastic measures but, as Federal Hill Capital puts it, "after [a] meeting and the many objections[,]" decided to pass a less restrictive ordinance, is indicative of a democratic process—not a reason to find the result unconstitutional. In a similar vein, we have in the past recognized that "a statute or regulation is not lacking in a rational basis simply because it addresses a broader problem in small or incremental stages." *Mackie*, 936 A.2d at 598 (quoting *Medeiros*, 431 F.3d at 31).[10]

With respect to the contention that the ordinance is over-inclusive, we also have recognized that "a [s]tate does not violate the Equal Protection Clause [of the Federal Constitution] merely because the classifications made by its laws are imperfect." *Berberian*, 374 A.2d at 795 (upholding

---

[10] The only evidence Federal Hill Capital brought forth to support its argument that the statute was under-inclusive was an affidavit by a member of Federal Hill Capital that he had conducted personal research and determined that, of 103 houses within 750 feet of 15 Oakdale Street, approximately 40 percent are not single-family homes. In our view, such a statistic, which was expressly termed a "limited area example," does not carry the day that the Amendment is so under-inclusive so as to be constitutionally void under rational basis review.

- 19 -

the Rhode Island statutes establishing a minimum age as a precondition to obtain a motor vehicle license or learner's permit under rational basis review).[11]  That same principle applies here.

Finally, as to the argument that "it is not credible that the Ordinance will have any impact on the problems it was purportedly enacted to address, or that the problems themselves actually exist[,]" we emphasize that, under our law, we are constrained to merely ask whether any conceivable basis supports the classification at issue and whether a legislative body could "rationally conclude that the legislation would resolve a legitimate problem." *Mackie*, 936 A.2d at 596.  Federal Hill Capital is unable to convince us that the City Council's goal of maintaining the residential character of neighborhoods would not be advanced by restricting specified housing configurations.  Moreover, the exhibit presented by the City at the trial court that consisted of correspondence from many individuals highlighting the impact of student housing belies any claim that maintaining the residential character of certain neighborhoods is not a problem in Providence.

It is true that at least one court of last resort, the Court of Appeals of Maryland, has held that a similar ordinance to the ordinance at issue in this case failed to satisfy rational basis review. In that case, *Kirsch*, cited *supra*, in a four-to-three decision—the same decision that rejected the notion that college students are a suspect class—the Maryland court considered whether a zoning ordinance in Prince George's County, known as the "mini-dorm" zoning ordinance, which disallowed between three and five unrelated "full-time or part-time students at an institution of higher learning" from living together in certain residences unless strict requirements were met,

---

[11] It remains true that a law can be so under-inclusive or over-inclusive that the constitution cannot tolerate the classification. *See Brown*, 564 U.S. at 805 (holding that the extreme levels of under- and over-inclusiveness rendered a law restricting the sale and rental of videogames to minors unconstitutional in the First Amendment context).  Nevertheless, allusions to imagined and fanciful factual scenarios, such as the effect of the law on four fictional divinity students, to bolster under- and over-inclusiveness arguments should not be seriously considered, especially when conducting a rational basis review analysis.

satisfied equal protection. *Kirsch*, 626 A.2d at 373-75. Such requirements included that "[r]ooms used for sleeping purposes shall have not less than seventy (70) square feet per resident" and that "[a]ll parking spaces shall be provided on-site" unless certain enumerated exceptions were met. *Id.* at 374. A challenge to the ordinance was brought by property owners and two University of Maryland students. *Id.* at 375.

The court struck down the ordinance after determining that rational basis review was the proper level of scrutiny under which to examine the ordinance, holding that "[t]o differentiate between permissible residential tenant classes by creating more strenuous zoning requirements for some and less for others based solely on the occupation which the tenant pursues away from that residence is that sort of arbitrary classification forbidden under our constitutions." *Kirsch*, 626 A.2d at 379, 380. In so doing, that court reasoned that "under the ordinance a landlord of a building originally constructed as a one, two or three family dwelling is permitted to rent the same for occupancy by three to five unrelated persons so long as they are not pursuing higher education without incurring the burdens of complying with the arduous requirements of the ordinance." *Id.* at 381. For obvious reasons, Federal Hill Capital urges us to use *Kirsch* as a guidepost.

The minority in *Kirsch* highlighted that the majority "seem[ed] to be either subtly altering the rational basis test, or paying lip service to that test but refusing to apply it[.]" *Kirsch*, 626 A.2d at 381 (Chasanow, J., dissenting, with whom Murphy, C.J., and Rodowsky, J., joined). After explaining that it was the court's obligation to uphold the ordinance "if any state of facts reasonably can be conceived that would sustain the classification," *id.* at 382 (quoting *Creative School v. Board*, 219 A.2d 789, 801 (Md. 1966)), the dissenters further explained:

> "Several states of facts reasonably can be conceived that would justify the student/non-student classification. We can conceive that some students of the University of Maryland and Bowie State University might not like to live in the campus dormitories and

would prefer to live off campus but close to their universities. We can conceive that as full or part-time students, they may only have limited funds and are therefore more willing to tolerate crowded, inferior living quarters. Real estate speculators, seizing upon this market, may buy small, inexpensive single-family residences close to these institutions of higher learning and rent formerly single-family homes to several students per house. Many of these students have cars which they might park on the street. As only nine-month tenants, the students may not be concerned about maintaining the property. Intolerant neighbors inconvenienced by the shortage of parking spaces and concerned about declining aesthetics of their neighborhoods may put their homes up for sale. Prospective buyers may not be eager to move into a neighborhood with neglected, crowded student group residences, so the speculators may be able to purchase more houses at deflated prices. The speculators, without doing anything more than is minimally necessary to rent the properties, can create more mini-dorms in close proximity to these two Universities. Soon there may be a real danger that many quiet college residential neighborhoods will be saturated with student mini-dorms. These assumed justifications are not irrational or arbitrary.

"It is also easy to conceive that there is no such problem with non-students or people with other occupations. These non-students are more likely to be employed full-time than are students, and with more money to spend on housing, they presumably may be less willing to tolerate crowded, inferior living conditions. Also, since they will live in the same residence all year long, rather than only for nine months of the year, the premises are less likely to be neglected." *Id.* at 382-83 (Chasanow, J., dissenting).

We agree with the dissent and believe that those remarks apply with equal force to the case before us.

Moreover, the Supreme Court of the United States has, like the Court of Appeals of Maryland, also largely dealt with the question that is before us today. In *Village of Belle Terre*, also cited *supra*, and as explained *supra*, six college students at Stony Brook University and their landlord brought an action to invalidate a zoning ordinance prohibiting more than two unrelated persons from living together in "one-family dwellings[.]" *Village of Belle Terre*, 416 U.S. at 2-3.

- 22 -

The Court, after rejecting the notion that any fundamental right was in play, *id.* at 7, upheld the ordinance, stating:

> "The regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather continuously pass by; more cars are parked; noise travels with crowds.
>
> "A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one * * * . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Id.* at 9.

We are of the opinion that these observations apply with full force to Federal Hill Capital's challenge to the Amendment in this case and we see no reason to deviate from that logic here.[12]

It is conceivable that the City Council could have determined that a large number of college students residing in single-family homes in residential areas is deleterious to the preservation of the character of these areas. It is further conceivable that the City Council could have concluded that, by restricting the number of college students that may rent single-family homes in these areas, some incremental benefit might be effectuated. The rationality of these possibilities is strengthened by the fact that the Amendment conforms with the mission of the City of Providence Zoning Ordinance, which explicitly states among its purposes: "[p]romoting the public health, safety, and general welfare" and "[p]romoting a balance of housing choices, for all income levels

---

[12] Federal Hill Capital highlights a distinction the Maryland high court made in *Kirsch v. Prince George's County*, 626 A.2d 372 (Md. 1993), that the ordinance in *Kirsch* was unlike that of the ordinance at issue in *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974), because the *Kirsch* ordinance differentiated "on the occupation of the persons" dwelling within restricted property rather than "on the nature of the use of the property," as the Maryland court insisted the ordinance did in *Village of Belle Terre*. *Kirsch*, 626 A.2d at 381. To the extent this distinction exists, we view it as irrelevant.

and groups, to assure the health, safety, and welfare of all citizens and their rights to affordable, accessible, safe, and sanitary housing[,]" goals that are mandated by the General Assembly. City of Providence Zoning Ordinance § 1-101(A) and § 1-101(H); *see* G.L. 1956 § 45-24-30(a)(1), (8). The rationality of the Amendment is further illustrated by its adherence to the City of Providence's Comprehensive Plan, a document which the General Assembly requires all cities and towns to create to steer development. *See* § 45-24-50.  Indeed, the Providence Comprehensive Plan recognizes that "[t]he competitive nature of the housing market has * * * impacted the availability of affordable housing, as many rental property owners have chosen to rent to students rather than families."[13]

Simply put, Federal Hill Capital is unable to negate, beyond a reasonable doubt, every conceivable basis which might support the Amendment to the zoning ordinance.  We therefore are unable to say that the Amendment is not rationally related to the legitimate state purpose of preserving the residential character of certain neighborhoods.  There is no violation of the Rhode Island Constitution's Equal Protection Clause and, it follows, no violation of the Rhode Island Constitution's Due Process Clause.

### III

### Conclusion

The judgment of the Superior Court is affirmed.  The papers shall be returned to that tribunal.

---

[13] Providence Tomorrow: The Comprehensive Plan, http://www.providenceri.gov/efile/5784.pdf (last visited May 26, 2020).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Federal Hill Capital, LLC et al. v. City of Providence, by and through its Treasurer, James Lombardi, et al. |
| **Case Number** | No. 2018-114-Appeal.<br>(PC 16-808) |
| **Date Opinion Filed** | May 27, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Jeffrey L. Levy, Esq.<br>Charles D. Blackman, Esq. |
| | For Defendants:<br><br>Megan Maciasz DiSanto, Esq.<br>Lisa Dinerman, Esq. |

SU-CMS-02A (revised June 2016)